

JUDGE PATTERSON

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Urban Radio I, L.L.C.
3 Park Avenue, 40th Floor
New York, NY 10016

Plaintiff,

vs.

Federal Communications Commission
Room 8-A471
445 12th Street, SW
Washington, DC 20554

Defendant.

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Case: 08 CV 5176
Assigned To:
Assign. Date:
Description:

RECEIVED
JUN 05 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Preliminary Statement**

1. This is an action under the Freedom of Information Act, as amended, 5 U.S.C. §552 ("FOIA"), for declaratory, injunctive, and other appropriate relief, seeking, principally, the immediate production of unredacted agency records requested by Urban Radio I, L.L.C. ("Urban Radio") from defendant Federal Communications Commission (the "FCC").

2. The FCC has violated FOIA by: (i) improperly withholding and redacting responsive records, including failing to produce reasonably segregable portions of withheld responsive records; (ii) conducting an inadequate search for requested records; and (iii) failing to respond to Urban Radio's administrative appeals within the time limits mandated by FOIA.

3. Urban Radio seeks: (i) a declaration that the records sought are subject to disclosure under FOIA; (ii) affirmative injunctive relief requiring the FCC to immediately

produce all responsive records that have been unlawfully withheld or redacted, and to conduct an adequate search for requested records; and (iii) an award of reasonable attorneys' fees and other litigation costs.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6. Declaratory relief is authorized by 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 57.

**Parties**

7. Plaintiff Urban Radio is a Delaware limited liability company with its principal place of business located at 3 Park Avenue, 40th Floor, New York, New York 10016. Urban Radio is the licensee of commercial radio station WBLS(FM), FCC Facility ID No. 28203 ("WBLS"). WBLS's community of license is New York, NY.

8. Defendant, the FCC, is an independent United States government regulatory agency. The FCC is an agency within the meaning of 5 U.S.C. § 552(f)(1).

**Factual Allegations**

9. On January 31, 2006, Urban Radio filed its Application for Renewal of License for WBLS, File No. BRH-20060131AXZ (the "Renewal Application"), with the FCC, which the FCC "accepted for filing" on February 2, 2006. The current status of the Renewal Application is "pending" because the FCC has taken no action on the Renewal Application.

10. On February 6, 2008, counsel for Urban Radio sent, via e-mail, two FOIA requests on Urban Radio's behalf to the FCC pursuant to §0.461 of the FCC's rules, 47 C.F.R.

§0.461. One of the FOIA requests (the "FOIA Request for Indecency Records") sought "copies of any and all records concerning indecency complaints and/or proceedings regarding WBLS." A copy of the FOIA Request for Indecency Records is attached as Exhibit A. The other FOIA request (the "FOIA Request for Sponsorship Records") sought "copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS." A copy of the FOIA Request for Sponsorship Records is attached as Exhibit B.

11.    On February 7, 2008, counsel for Urban Radio received two e-mails from Patricia Quartey, a member of the FCC's staff, acknowledging FCC receipt of the FOIA Request for Indecency Records and the FOIA Request for Sponsorship Records and providing an anticipated response date by the FCC with respect to both FOIA requests of March 6, 2008. These e-mails are attached as Exhibit C.

12.    On March 14, 2008, counsel for Urban Radio received an e-mail from William Knowles-Kellett, Esq., an FCC staff member, informing counsel for Urban Radio that the FCC, pursuant to 5 U.S.C. § 552(a)(6)(b)(i), was extending the deadline for its responses to both FOIA requests by 10 working days, to March 20, 2008. This e-mail is attached as Exhibit D.

13.    On March 20, 2008, counsel for Urban Radio received a telephone call from William Knowles-Kellett, Esq., an FCC staff member, requesting a one-week extension to the March 20, 2008 deadline. On March 20, 2008, counsel for Urban Radio sent an e-mail to William Knowles-Kellett, Esq., an FCC staff member, granting the requested one-week extension to the March 20, 2008 deadline and specifying that, as a result of the extension, Urban Radio expected the FCC to fully respond to both FOIA requests on or before March 27, 2008. This e-mail is attached as Exhibit E.

14.     On March 21, 2008, counsel for Urban Radio received by e-mail from Debbie Byrd, an FCC staff member, the FCC's response to the FOIA Request for Indecency Records (the "Indecency Response"). The Indecency Response contained a cover letter from Gary Schonman, Acting Deputy Chief, Investigations and Hearings Division, Enforcement Bureau, stating that the FCC had "located six pages of documents responsive to your request, copies of which are enclosed." In addition, Mr. Schonman's letter stated that the FCC had "redacted information from those documents, where necessary, to protect individuals' personal privacy. *See* 5 U.S.C. §552(b)(6)." The Indecency Response is attached as Exhibit F.

15.     The six pages of redacted documents provided in the Indecency Response consisted of three, two-page FCC records which appear to be printouts of screens from the FCC's computer system (the "Printouts") recording three complaints received by the FCC concerning WBLS programming (the "Complaints"). For each of the Printouts, the FCC redacted the same categories of information. These redactions include: the full titles of the Printouts; the "Current Status" of the Complaints; the name of the FCC employee to which the Complaints were assigned; the name of the FCC employee for which the Complaints were "Closed By;" the "Service Date[s]" of the Complaints; the "Indecency Referral Code[s]" with respect to the Complaints; and the names and addresses of the individuals who submitted the Complaints. In addition, the FCC failed to provide copies of the actual Complaints submitted which underlie the processing of the three Printouts.

16.     No further response from the FCC concerning the FOIA Request for Sponsorship Records was received by counsel for Urban Radio on or before March 27, 2008. Therefore, by operation of FOIA, the FOIA Request for Sponsorship Records was deemed denied.

17.     On April 2, 2008, counsel for Urban Radio filed a "Review of Freedom of Information Action" with the FCC due to the inadequacy of the Indecency Response (the "Indecency Appeal"). The Indecency Appeal sought unredacted copies of the records provided in the Indecency Response as well as any and all other records in the FCC's possession responsive to the FOIA Request for Indecency Records. The Indecency Appeal is attached as Exhibit G.

18.     On April 2, 2008, counsel for Urban Radio filed a "Review of Freedom of Information Action" with the FCC due to the FCC's failure to provide any response to the FOIA Request for Sponsorship Records (the "Sponsorship Appeal"). The Sponsorship Appeal sought entire, unredacted copies of any and all records responsive to the FOIA Request for Sponsorship Records. The Sponsorship Appeal is attached as Exhibit H.

19.     On April 9, 2008, counsel for Urban Radio received by e-mail from William Knowles-Kellett, Esq., an FCC staff member, the FCC's response to the FOIA Request for Sponsorship Records as an attached file (the "Sponsorship Response"). The Sponsorship Response only consisted of a one-page letter from Gary Schonman, Acting Deputy Chief, Investigations and Hearings Division, Enforcement Bureau. Mr. Schonman wrote that the Commission had "not located any copies of complaints and [has] no pending proceedings against Station WBLS(FM)," but had "located 13 pages of documents relating to sponsorship identification that reference Station WBLS(FM)." According to Mr. Schonman, however, the Commission would not disclose those documents because it found "that these pages are exempt from disclosure under Exemption 7 of the FOIA because [ ] the release of these documents is likely to interfere with pending and/or prospective enforcement proceedings. *See* 5 U.S.C. § 552(b)(7)." The Sponsorship Response is attached as Exhibit I.

20. As a consequence of receiving the Sponsorship Response, on April 16, 2008, counsel for Urban Radio filed a "Supplement to Review of Freedom of Information Action" with the FCC to supplement the Sponsorship Appeal in order to address the inadequacy of the untimely Sponsorship Response. This supplemental filing is attached as Exhibit J.

21. To date, the FCC has failed to respond to the Indecency Appeal. Under 5 U.S.C. § 552(a)(6)(A)(ii), the FCC had 20 days from its receipt of the Indecency Appeal, or until April 30, 2008, to make a determination with respect to the appeal.

22. To date, the FCC has failed to respond to the Sponsorship Appeal. Under 5 U.S.C. § 552(a)(6)(A)(ii), the FCC had 20 days from its receipt of the Sponsorship Appeal, or until April 30, 2008, to make a determination with respect to the appeal.

23. Urban Radio is therefore deemed to have exhausted its administrative remedies under FOIA. *See* 5 U.S.C. § 552(a)(6)(C)(i).

## Counts for Relief

### Count One: Failure to Provide Responsive Records

24. Urban Radio realleges and incorporates paragraphs 1-23.

25. On February 6, 2008, Urban Radio properly submitted to the FCC both the FOIA Request for Indecency Records and the FOIA Request for Sponsorship Records, requesting records that are public records subject to FOIA.

26. In response to the FOIA Request for Indecency Records, the FCC failed to provide all reasonably segregable portions of the 6 pages of responsive documents contained in the Indecency Response despite the near certainty that the redacted portions are not exempt under FOIA.

27.     The FCC improperly relied on the exemption under 5 U.S.C. §§ 552(b)(6) in redacting portions of the records provided in the Indecency Response.

28.     Accordingly, the FCC's redaction of the documents responsive to the FOIA Request for Indecency Records is improper and violates FOIA.

29.     In response to the FOIA Request for Sponsorship Records, the FCC failed to provide reasonably segregable portions of the 13 pages of withheld responsive records, as required by 5 U.S.C. § 552(b) and despite the near certainty that some portions of the 13 pages of responsive records are reasonably segregable.

30.     The FCC improperly relied on the exemption under 5 U.S.C. §§ 552(b)(7) in withholding records responsive to the FOIA Request for Sponsorship Records.

31.     Accordingly, the FCC's withholding of documents responsive to the FOIA Request for Sponsorship Records is improper and violates FOIA.

**Count Two:**
**Failure to Conduct an Adequate Search for Responsive Records**

32.     Urban Radio realleges and incorporates paragraphs 1-31.

33.     On February 6, 2008, Urban Radio properly submitted to the FCC the FOIA Request for Indecency Records, requesting records that are public records subject to FOIA.

34.     The FCC conducted an inadequate search for records responsive to the FOIA Request for Indecency Records in violation of 5 U.S.C. § 552(a)(3).

35.     Upon information and belief, the FCC possesses the Complaints upon which the records in the Indecency Response were based.

36.     The FCC did not include the Complaints with the Indecency Response, despite the near certainty that records of such Complaints are in the possession of the FCC.

37. Accordingly, the FCC's failure to adequately search for and produce these Complaints is improper and violates FOIA.

**Count Three:**
**Failure to Make a Determination Within the Statutory Time Limits**

38. Urban Radio realleges and incorporates paragraphs 1-37.

39. On February 6, 2008, Urban Radio properly submitted to the FCC both the FOIA Request for Indecency Records and the FOIA Request for Sponsorship Records, requesting records that are public records subject to FOIA.

40. On April 2, 2008, Urban Radio properly filed both the Indecency Appeal and the Sponsorship Appeal with the FCC after the FCC failed to provide any substantive response to Urban Radio concerning either the Indecency Appeal or the Sponsorship Appeal within the mandatory time limit prescribed by 5 U.S.C. § 552(a)(6)(A)(ii).

41. The FCC's failure to make a determination with respect to either the Indecency Appeal or the Sponsorship Appeal within the prescribed time limit is improper and violates FOIA.

**WHEREFORE, Urban Radio respectfully requests that this Court:**

A. Declare that the FCC's withholding of records responsive to the FOIA Request for Sponsorship Records is unlawful under FOIA.

B. Declare that the FCC's failure to provide reasonably segregable portions of the 13 pages of withheld records responsive to the FOIA Request for Sponsorship Records is unlawful under FOIA.

C. Declare that the FCC's redaction of portions of the records contained in the Indecency Response is unlawful under FOIA.

D. Declare that the FCC's failure to conduct an adequate search for the records requested in the FOIA Request for Indecency Records is unlawful under FOIA.

E. Declare that the FCC's failure to make a determination with respect to the Indecency Appeal within the statutory time limit is unlawful under FOIA.

F. Declare that the FCC's failure to make a determination with respect to the Sponsorship Appeal within the statutory time limit is unlawful under FOIA.

G. Enter an affirmative injunction that directs the FCC to search for and make all records responsive to the FOIA Request for Indecency Records available to Urban Radio, unredacted, and without any further delay.

H. Enter an affirmative injunction that directs the FCC to search for and make all records responsive to the FOIA Request for Sponsorship Records available to Urban Radio, unredacted, and without any further delay.

I. Award Urban Radio reasonable attorneys' fees and other litigation costs.

J. Grant Urban Radio any further relief this Court deems just and proper.

Respectfully Submitted,

By Corrine A. Irish (Bar No. ci1106)
Holland & Knight LLP
195 Broadway
24th Floor
New York, NY 10007
(212) 513-3200 Phone
(212) 385-9010 Fax
Corrine.irish@hklaw.com
*Counsel for Plaintiff*

*Of Counsel*:

Charles R. Naftalin
Charles D. Tobin
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006
(202) 955-3000  Phone
(202) 955-5564  Fax
*Counsel for Plaintiff*

**Exhibit A**

**Brown, Leighton T (WAS - X77161)**

**From:** Brown, Leighton T (WAS - X77161)
**Sent:** Wednesday, February 06, 2008 3:05 PM
**To:** 'FOIA@fcc.gov'
**Subject:** Freedom of Information Act Request

**Attachments:** FOIA Request WBLS(FM)(Indecency)(2-6-08).pdf

FOIA Request
/BLS(FM)(Indecenc.

Please see the attached Freedom of Information Act Request made on behalf of Urban Radio I, L.L.C., licensee of WBLS(FM) (Facility ID No. 28203).

Sincerely,

Leighton T. Brown
Holland + Knight

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Main 202 955 3000
Direct 202 457 7161
Fax 202 955 5564
Email Leighton.Brown@hklaw.com

NOTICE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

Holland+Knight

Tel 202 955 3000
Fax 202 955 5564

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
www.hklaw.com

February 6, 2008

LEIGHTON T. BROWN
202-457-7161
leighton.brown@hklaw.com

Federal Communications Commission
445 12th Street, S.W.
Room 1-A836
Washington, DC 20554

Re: **Freedom of Information Act Request**
Indecency Complaint Concerning WBLS(FM) (Facility ID No. 28203)

We have reason to believe that the Commission has received an indecency complaint regarding WBLS(FM), New York, New York, and may have begun an investigation based on this complaint. Therefore, pursuant to 47 C.F.R. § 0.461, and on behalf of Urban Radio I, L.L.C., the licensee of WBLS, we respectfully request copies of any and all records concerning indecency complaints and/or proceedings regarding WBLS.

*Currently, the maximum search and copying fee we are willing to pay is $500.00.*

We do not believe that the requested records are the kinds listed in 47 C.F.R. § 0.457, or that the records have been withheld from inspection under 47 C.F.R. § 0.459.

In the event there are any questions concerning this request, please contact the undersigned.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Leighton T. Brown
Counsel for Urban Radio I, L.L.C.

# Exhibit B

**Brown, Leighton T (WAS - X77161)**

**From:** Brown, Leighton T (WAS - X77161)
**Sent:** Wednesday, February 06, 2008 3:05 PM
**To:** 'FOIA@fcc.gov'
**Subject:** Freedom of Information Act Request

**Attachments:** FOIA Request WBLS(FM)(Sponsor ID)(2-6-08).pdf

FOIA Request VBLS(FM)(Sponsor .

Please see the attached Freedom of Information Act Request made on behalf of Urban Radio I, L.L.C., licensee of WBLS(FM) (Facility ID No. 28203).

Sincerely,

Leighton T. Brown
Holland + Knight

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Main 202 955 3000
Direct 202 457 7161
Fax 202 955 5564
Email Leighton.Brown@hklaw.com

NOTICE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

Holland+Knight

Tel 202 955 3000
Fax 202 955 5564

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, D.C. 20006-6801
www.hklaw.com

February 6, 2008

**LEIGHTON T. BROWN**
202-457-7161
leighton.brown@hklaw.com

Federal Communications Commission
445 12th Street, S.W.
Room 1-A836
Washington, DC 20554

Re: **Freedom of Information Act Request**
Sponsorship Identification Complaint Concerning WBLS(FM)
Facility ID No. 28203

We have reason to believe that the Commission has received a sponsorship identification complaint regarding WBLS(FM), New York, New York, and may have begun an investigation based on this complaint. Therefore, pursuant to 47 C.F.R. § 0.461, and on behalf of Urban Radio I, L.L.C., the licensee of WBLS, we respectfully request copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS.

Currently, the maximum search and copying fee we are willing to pay is $500.00.

We do not believe that the requested records are the kinds listed in 47 C.F.R. § 0.457, or that the records have been withheld from inspection under 47 C.F.R. § 0.459.

In the event there are any questions concerning this request, please contact the undersigned.

Respectfully submitted,

HOLLAND & KNIGHT LLP

Leighton T. Brown
Counsel for Urban Radio I, L.L.C.

**Exhibit C**

**Brown, Leighton T (WAS - X77161)**

**From:** Patricia Quartey [Patricia.Quartey@fcc.gov] on behalf of FOIA [FOIA@fcc.gov]
**Sent:** Thursday, February 07, 2008 12:44 PM
**To:** Brown, Leighton T (WAS - X77161)
**Cc:** Shoko Hair; Patricia Quartey
**Subject:** RE: Freedom of Information Act Request

Dear Mr. Brown:

This acknowledges receipt of your Freedom of Information Act (FOIA) request filed with the Federal Communications Commission (FCC). Your request has been assigned FOIA control number 2008-239. Agencies are allowed 20 working days to respond to your request, extending this period for an additional 10 working days under certain circumstances. See 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i). We anticipate responding to your request on 03/06/08. If additional time is needed to respond to your requests you will be notified.

If you have any questions concerning this notice, please call the FOIA Office at 202-418-0440.

FCC FOIA Office

-----Original Message-----
From: Leighton.Brown@hklaw.com [mailto:Leighton.Brown@hklaw.com]
Sent: Wednesday, February 06, 2008 3:05 PM
To: FOIA
Subject: Freedom of Information Act Request

Please see the attached Freedom of Information Act Request made on behalf of Urban Radio I, L.L.C., licensee of WBLS(FM) (Facility ID No. 28203).

Sincerely,

Leighton T. Brown
Holland + Knight

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Main 202 955 3000
Direct 202 457 7161
Fax 202 955 5564
Email Leighton.Brown@hklaw.com

NOTICE: This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**Brown, Leighton T (WAS - X77161)**

| | |
|---|---|
| **From:** | Patricia Quartey [Patricia.Quartey@fcc.gov] on behalf of FOIA [FOIA@fcc.gov] |
| **Sent:** | Thursday, February 07, 2008 12:43 PM |
| **To:** | Brown, Leighton T (WAS - X77161) |
| **Cc:** | Shoko Hair; Patricia Quartey |
| **Subject:** | RE: Electronic FOIA (E-FOIA) Request Form |

Dear Mr. Brown:

This acknowledges receipt of your Freedom of Information Act (FOIA) request filed with the Federal Communications Commission (FCC). Your request has been assigned FOIA control number 2008-238. Agencies are allowed 20 working days to respond to your request, extending this period for an additional 10 working days under certain circumstances. See 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i). We anticipate responding to your request on 03/06/08. If additional time is needed to respond to your requests you will be notified.

If you have any questions concerning this notice, please call the FOIA Office at 202-418-0440.

FCC FOIA Office

-----Original Message-----
From: Leighton T. Brown [mailto:leighton.brown@hklaw.com]
Sent: Wednesday, February 06, 2008 12:13 PM
To: FOIA
Subject: Electronic FOIA (E-FOIA) Request Form

Leighton T. Brown
2099 Pennsylvania Ave., N.W.
Suite 100
Washington, DC United States
20006

Phone Number: 202-457-7161
Fax Number:202-955-5564
Email Address: leighton.brown@hklaw.com

Date of Request: 02/06/2008

Leighton T. Brown Requests:
Based upon a discussion with Commission staff, we are making a second request for copies of any and all complaints, comments, or other written materials relevant to the allegations contained in the Notice of Apparent Liability for Forfeiture (FCC 08-25, File Nos., EB-03-IH-0122 and EB-03-IH-0353) regarding WDIO-TV (Facility ID No. 71338).

Although we believe our first request was broad enough, we specify that we intend for our FOIA request to encompass all documents used as a factual basis for the Commission's determination in the NAL regarding "contemporary community standards for the broadcast medium."

---

Notice of Apparent Liability for Forfeiture (released 01/25/2008)

FCC 08-25

File Nos. EB-03-IH-0122 and EB-03-IH-0353

WDIO-TV (Facility ID No. 71338)

*WDIO-TV, LLC, licensee of WDIO-TV*

Maximum Fee: 500

Listed In CFR 47:
If Yes Give Reasons for Inspection:

Is the requester entitled to a restricted fee assessment? No If Yes Give Reasons for Inspection:

Any Additional Information and/or Comments:

Server protocol: HTTP/1.1
Remote host: 192.104.54.5
Remote IP address: 192.104.54.5

**Exhibit D**

**Brown, Leighton T (WAS - X77161)**

**From:** William Knowles-Kellett [William.Knowles-Kellett@fcc.gov]
**Sent:** Friday, March 14, 2008 2:03 PM
**To:** Brown, Leighton T (WAS - X77161)
**Cc:** Debbie Byrd
**Subject:** Freedom of Information Act Requests Control Nos. 2008-238 and 2008-239
**Follow Up Flag:** Follow up
**Flag Status:** Completed

Mr. Brown-

The above-referenced requests, filed under the Freedom of Information Act ("FOIA"), were received by our FOIA Control Office on February 7, 2008. In your requests, you seek copies of certain complaints regarding WBLS.

We are in the process of locating the documents responsive to your requests. As required, we endeavor to respond to FOIA requests within 20 working days. However, where a request involves either a large number of documents or requires coordination with other components of the agency, we occasionally require the 10 working day extension provided for in 5 U.S.C. 552(a)(6)(b)(I). Because your request requires consultation with other components of the Commission, we are extending the deadline for our response by 10 working days, *i.e.*, to March 20, 2008 *Id.*

If you have any questions regarding this matter please contact me. Thank you.

Sincerely,
William Knowles-Kellett
Attorney
Investigations and Hearings Division, Enforcement Bureau
Federal Communications Commission
(717) 338-2505
Fax (717) 338-2574

**Exhibit E**

**Brown, Leighton T (WAS - X77161)**

**From:** Brown, Leighton T (WAS - X77161)
**Sent:** Thursday, March 20, 2008 11:32 AM
**To:** 'William Knowles-Kellett'
**Cc:** Naftalin, Charles (WAS - X77040)
**Subject:** Freedom of Information Act Requests Control Nos. 2008-238 and 2008-239

Dear Bill,

This email is in response to your request, made by telephone today, March 20, 2008, for an extension of time with respect to the FCC's response to the above-referenced FOIA requests regarding WBLS. We hereby grant your request for a one-week extension to the current due date of March 20, 2008 for the FCC's responses. Therefore, we expect that the FCC fully respond to the above-referenced FOIA requests on or before March 27, 2008.

Thank you for your assistance in this matter.

Sincerely,

**Leighton T. Brown**
**Holland + Knight**

Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Main 202 955 3000
Direct 202 457 7161
Fax 202 955 5564
Email Leighton.Brown@hklaw.com

**NOTICE:** This e-mail is from a law firm, Holland & Knight LLP ("H&K"), and is intended solely for the use of the individual(s) to whom it is addressed. If you believe you received this e-mail in error, please notify the sender immediately, delete the e-mail from your computer and do not copy or disclose it to anyone else. If you are not an existing client of H&K, do not construe anything in this e-mail to make you a client unless it contains a specific statement to that effect and do not disclose anything to H&K in reply that you expect it to hold in confidence. If you properly received this e-mail as a client, co-counsel or retained expert of H&K, you should maintain its contents in confidence in order to preserve the attorney-client or work product privilege that may be available to protect confidentiality.

**Exhibit F**

**Brown, Leighton T (WAS - X77161)**

| | |
|---|---|
| **From:** | Debbie Byrd [Debbie.Byrd@fcc.gov] |
| **Sent:** | Friday, March 21, 2008 12:53 PM |
| **To:** | Brown, Leighton T (WAS - X77161) |
| **Cc:** | William Knowles-Kellett; Gary Schonman; Shoko Hair; Patricia Quartey; Cerita Diggs |
| **Subject:** | FOIA 2008-239 |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |
| ***Attachments:*** | *Responsive letters.pdf* |

Mr. Leighton, please see attached response to your FOIA request.

<<Responsive letters.pdf>>
Debbie J. Byrd
Enforcement Bureau
Investigations and Hearings Division
202-418-0834



**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau, Investigations and Hearings Division
445 12th Street, S.W., Room 4-C330
Washington, D.C. 20554

March 21, 2008

*Via email to leighton.brown@hklaw.com*

Leighton T. Brown, Esq.
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Re: Freedom of Information Act Request
FOIA Control No. 2008-239

Dear Mr. Brown:

This letter responds to your recent request, submitted under the Freedom of Information Act ("FOIA"). Therein, you request "copies of any and all records concerning indecency complaints and/or proceedings regarding WBLS."

We have located six pages of documents responsive to your request, copies of which are enclosed. We have redacted information from those documents, where necessary, to protect individuals' personal privacy. *See* 5 U.S.C. §552(b)(6). If you believe we have failed to locate other responsive documents, please describe the documents with particularity, and we will endeavor to locate them.

If you believe this to be a denial of your request, you may file an application for review with the FCC's Office of General Counsel within thirty (30) days of the date of this letter. 47 C.F.R. §§ 0.461(j) and 1.115. If you have further questions, please feel free to call William Knowles-Kellett at (717) 338-2505.

Sincerely,

Gary Schonman
Acting Deputy Chief
Investigations and Hearings Division
Enforcement Bureau

EB-06-IH-5300

## COMPLAINT FOR [redacted]

Complaint Type: Broadcast | Account Type: Residential | Congressional Complaint:

| | | | |
|---|---|---|---|
| IC Number: | 06-WB12142462 | Case Type: | Complaint |
| Date Received: | 08/24/2006 | Complainant: | [redacted] |
| Date Entered: | 08/24/2006 | Date Assigned: | 08/24/2006 |
| Entered By: | FCC_NOTES01 | Date Reassigned: | |
| Assigned To: | [redacted] | Service Date: | [redacted] |
| Date Closed: | 08/28/2006 | Response Date: | |
| Closed By: | [redacted] | Original Analyst: | |
| Close Letter Needed? | ○ Yes ● No | Purged By: | Purged Date: |
| | | Removed By: | Removed Date: |
| Supervisor Check: | ○ Yes ● No | Indecency Referral Code: | [redacted] |

Current Status: [redacted]

Associated Case:

**Complaint Summary:**
The Wendy Williams Show. They are always talking about sex, describing different sexual positions or acts. Drinking alcohol on the show. Children can be listening to this at that time of day. Thank you

| | |
|---|---|
| Apparent Carrier(s): | |
| ☐ Yes<<< Check here if you wish to serve both a Wireline and Wireless carrier. | |
| Problem Number: | |

| | | | |
|---|---|---|---|
| Title: None | First Name: [redacted] | Middle Initial: | Last Name: [redacted] |
| Contact Name: | [redacted] | Best Time to Call: | |
| Contact Number: | Ext. | Consumer's Telephone Number. | Ext. |
| Fax Number: | | TTY Number: | |
| Email Address: | | Internet Address: | |
| PO Box: | | Address: | [redacted] |
| City: | Mt. Vernon | State: NY | Zip: 10550 |

| | |
|---|---|
| On Behalf Of: | |
| Company Name: | |
| Party's Name: | Relationship with the Party: |
| Party's Contact Number: Ext. | PO Box:<br>Address:<br>City:State:Zip: |
| Other Party that can be contacted? | |
| Name: | Relationship: |
| Contact Number: Ext. | Address:<br>City:, State: Zip: |
| **Amount of credit FCC effort generated: | Duplicate Credit Checked: ○ Yes ● No |

Have you paid any of the disputed charges?

*Did the company billing for these charges adjust or refund some or all of the disputed charges?*

If yes, what was the amount of the adjustment or refund?

a. Name of carrier(s) or company(ies) involved in your complaint: SBC/Yahoo

b. Telephone number for the carrier(s) or company(ies) involved with your complaint, including area code: Phone: Ext:

c. Which type of service is involved with your complaint:

TCPA Information from 475

1. the telephone number of the individual or company who called or faxed you: Ext:
2. your telephone number(s) on which the call or fax was received: Ext:
3. a description of the telemarketing call, pre-recorded message, or unsolicited fax, including an identification of the company whose products or services were being advertised, and any phone numbers that were included in the call or fax:
4. the "opt-out" number(s) provided in the call(s) or on the fax(es): *(List number(s) given in the call(s) or fax(es) for you to contact if you do not want to receive any* additional calls or faxes.) Ext:
5. Have you: (a) purchased anything from the company being advertised in the call or fax; (b) made an inquiry or application to that company; or (c) given consent to the company to send you the call or fax? If so, please describe and state when you had such contact with the company.

*Broadcast Information from 475B*

(1) Date of Program: Anytime
(2) Time of Program: 2-7pm
(3) Network: unknown
(4) Call Sign, Channel OR Frequency of the station on which you viewed/heard the material: WBLS/107.5
(5) City and State Where Program Was Viewed: Mt. Vernon, NY
(6) Name of Program or DJ/Personality/Song/Film: Wendy Williams

Updated?: ○ Yes ● No

**ANALYSIS SECTION**

| | | | |
|---|---|---|---|
| Correspondence Type: | ● Complaint ○ Inquiry | Source Code: | Internet |
| Apparent Carrier(s): | | Re-Serve Carrier(s): | |
| Responding Carrier(s): | | Assigned Subject Code: | Programming Issues |
| | | Program Type: | FM |
| Activity Code: | Direct | Assigned Code Acronym: | PROG |
| Final Responsible Party: | | Sub-Category: | Content Criticism (FCCR) |
| Copy of Response Sent to Consumer by Carrier?: | ○ Yes ○ No | | |
| Mediation with Carrier/Complainant?: | ○ Yes ○ No | Response Type: | |

Referral Information

| | | | |
|---|---|---|---|
| Date Referred: | 08/28/2006 | | Consumer Referral Letter Agency Refer |
| Referred To: | Agency Name(s): | Company Name(s): | Create TCPA |
| | FCC-Enforcement Bureau | | Indecent Dismissal Indecent - Re |



EB-07-IH-9563

# COMPLAINT FOR [redacted]

Complaint Type: Broadcast

Account Type: Residential

Congressional Complaint

| | | | |
|---|---|---|---|
| IC Number: | 07-WB13575100 | Case Type: | Complaint |
| Date Received: | 12/04/2007 | Complainant: | [redacted] |
| Date Entered: | 12/04/2007 | Date Assigned: | 12/05/2007 |
| Entered By: | OSCARServer | Date Reassigned: | |
| Assigned To: | [redacted] | Service Date: | [redacted] |
| Date Closed: | 12/06/2007 | Response Date: | |
| Closed By: | [redacted] | Original Analyst: | |
| Close Letter Needed? | Yes [redacted] No | Purged By: | Purged Date: |
| | | Removed By: | Removed Date: |
| Supervisor Check: | Yes [redacted] No | Indecency Referral Code: | [redacted] |

Current Status: [redacted]

Associated Case:

Complaint Summary:

this program is obscene. besides being a drug user for over 20 years (she has written a book aout it and a movie of it is coming out) she promotes on the airways pro abortion to young girls that call in for advice hour. yes she has an advice hour including medical advice even though she is not qualified. even 2 weeks ago she explained to her audience how to use drugs and there is apparently some kind of new drug out there that you snif and she wanted the public to call in to tell her about it. she has a convicted felon (drug use) as her side kick who is very anti gay as she is. wendy williams continually exposes without fact every man or woman that she does not like to be gay. Rumor has it Will Smith the actor wants to buy the station because she constantly trys to "out" him . wendy willaims and her staff continually drink while Broadcasting and she makes no secret about it. this behaviour has a serious affect on all people especially the young the advice to have an abortion I beleive is reprehensible. the airways belong to the people and if you request her broadcasts for the last 6 months or listen to her you will see that she is violating the fcc rules. as far as i am concerned. she constantly ridicules her staff calling them donkeys on the airways and even accused an intern on the airways of being a thief. her mission is to destruct everyone that gets in her way. it is so disgusting that last week she said a friend of hers smell and had left a used tampon in her "flap". What are the airways coming to?

Apparent Carrier(s):

Yes<< Check here if you wish to serve both a Wireline and Wireless carrier.

| | | | |
|---|---|---|---|
| Problem Number: | | | |
| Title: None | First Name: [redacted] | Middle Initial: [redacted] | Last Name: [redacted] |
| Contact Name: | [redacted] | Best Time to Call: | |
| Contact Number: | [redacted] | Consumer's Telephone Number: | Ext. |
| Fax Number: | | TTY Number: | |
| Email Address: | [redacted] | Internet Address: | |
| PO Box: | | Address: | [redacted] |
| City: | Upper Montclair | State: NJ | Zip: 07043 |

| | |
|---|---|
| On Behalf Of: | |
| Company Name: | |

| Party's Name: | Relationship with the Party: |
|---|---|
| Party's Contact Number: Ext. | PO Box:<br>Address:<br>City:State:Zip: |
| Other Party that can be contacted? | |
| Name: | Relationship: |
| Contact Number: Ext. | Address:<br>City:, State: Zip: |
| **Amount of credit FCC effort generated: | Duplicate Credit Checked: ◯ Yes ● No |

Have you paid any of the disputed charges?

Did the company billing for these charges adjust or refund some or all of the disputed charges?

If yes, what was the amount of the adjustment or refund?

a. Name of carrier(s) or company(ies) involved in your complaint Time Warner Cable

b. Telephone number for the carrier(s) or company(ies) involved with your complaint, including area code: Phone: Ext:

c. Which type of service is involved with your complaint:

TCPA Information from 475

1. the telephone number of the individual or company who called or faxed you: Ext:

2. your telephone number(s) on which the call or fax was received: Ext:

3. a description of the telemarketing call, pre-recorded message, or unsolicited fax, including an identification of the company whose products or services were being advertised, and any phone numbers that were included in the call or fax:

4. the "opt-Out" number(s) provided in the call(s) or on the fax(es): (List number(s) given in the call(s) or fax(es) for you to contact if you do not want to receive any additional calls or faxes.) Ext:

5. Have you: (a) purchased anything from the company being advertised in the call or fax; (b) made an inquiry or application to that company; or (c) given consent to the company to send you the call or fax? If so, please describe and state when you had such contact with the company.

Broadcast Information from 475B

(1) Date of Program: ongoing

(2) Time of Program: 3pm-7pm

(3) Network: abls

(4) Call Sign, Channel OR Frequency of the station on which you viewed/heard the material: 107.5

(5) City and State Where Program Was Viewed: new york new york

(6) Name of Program or DJ/Personality/Song/Film: wendy williams

Updated? ◯ Yes ● No

ANALYSIS SECTION

Correspondence Type: ● Complaint ◯ Inquiry

Source Code: Internet

Apparent Carrier(s):

Re-Serve Carrier(s):

Responding Carrier(s):

Assigned Subject Code: Programming Issues

Program Type: FM

Activity Code: Direct

Assigned Code Acronym: PROG

EB·07·IH·6072

# COMPLAINT FOR [redacted]

Complaint Type:Broadcast Account Type: Residential ☐ Congressional Complaint ☐ D

| | | | |
|---|---|---|---|
| IC Number: | 07-WB12944478 | Case Type: | Complaint |
| Date Received: | 04/13/2007 | Complainant: | [redacted] |
| Date Entered: | 04/13/2007 | Date Assigned: | 04/13/2007 |
| Entered By: | OSCARServer | Date Reassigned: | |
| *Assigned To:* | [redacted] | *Service Date:* | [redacted] |
| Date Closed: | 04/25/2007 | Response Date: | |
| Closed By: | [redacted] | Original Analyst: | |
| Close Letter Needed? | ○ Yes ● No | Purged By: | Purged Date: |
| | | Removed By: | Removed Date: |
| Supervisor Check: | ○ Yes ● No | Indecency Referral Code: | [redacted] |

Current Status: [redacted]

Associated Case:

Complaint Summary:

Brad Pitt and Angelina Jolie and their orphans and 1 "niglet". Niglet being the obscene word

| |
|---|
| Apparent Carrier(s): |
| ☐ Yes<<< Check here if you wish to serve both a Wireline and Wireless carrier. |
| Problem Number: |

| | | | |
|---|---|---|---|
| Title: None | First Name: [redacted] | Middle Initial: | Last Name: [redacted] |
| Contact Name: | [redacted] | Best Time to Call: | |
| Contact Number: | Ext. | Consumer's Telephone Number: | Ext. |
| Fax Number: | | TTY Number: | |
| Email Address: | | Internet Address: | |
| PO Box: | | Address: | [redacted] |
| City: | East Orange | State: NJ | Zip: 07017 |

| | |
|---|---|
| *On Behalf Of:* | |
| Company Name: | |
| Party's Name: | Relationship with the Party: |
| Party's Contact Number: Ext. | PO Box:<br>Address:<br>City:State:Zip: |
| Other Party that can be contacted? | |
| Name: | Relationship: |
| Contact Number: Ext. | Address:<br>City, State: Zip: |
| **Amount of credit FCC effort generated: | Duplicate Credit Checked: ○ Yes ● No |

Have you paid any of the disputed charges?

Did the company billing for these charges adjust or refund some or all of the disputed charges?

If yes, what was the amount of the adjustment or refund?
a. Name of carrier(s) or company(ies) involved in your complaint: Cyber Communication Services Ltd

b. Telephone number for the carrier(s) or company(ies) involved with your complaint, including area code: Phone: Ext:
c. Which type of service is involved with your complaint:

TCPA Information from 475

1. the telephone number of the individual or company who called or faxed you: Ext:
2. your telephone number(s) on which the call or fax was received: Ext:
3. a description of the telemarketing call, pre-recorded message, or unsolicited fax, including an identification of the company whose products or services were being advertised, and any phone numbers that were included in the call or fax:
4. the "opt-out" number(s) provided in the call(s) or on the fax(es): (List number(s) given in the call(s) or fax(es) for you to contact if you do not want to receive any additional calls or faxes.) Ext:
5. Have you: (a) purchased anything from the company being advertised in the call or fax: (b) made an inquiry or application to that company; or (c) given consent to the company to send you the call or fax? If so, please describe and state when you had such contact with the company.

Broadcast Information from 475B

(1) Date of Program: 04 11/07
(2) Time of Program: Afternoon
(3) Network: WBLS
(4) Call Sign, Channel OR Frequency of the station on which you viewed/heard the material: 107.5 FM
(5) City and State Where Program Was Viewed: New York, Hauppauge
(6) Name of Program or DJ/Personality/Song/Film: The Wendy Williams Experience

WBLS

Updated? ○ Yes ● No

ANALYSIS SECTION

| | | | |
|---|---|---|---|
| Correspondence Type: | ● Complaint ○ Inquiry | Source Code: | Internet |
| Apparent Carrier(s): | | Re-Serve Carrier(s): | |
| Responding Carrier(s): | | Assigned Subject Code: | Programming Issues |
| | | Program Type: | FM |
| Activity Code: | Direct | Assigned Code Acronym: | PROG |
| Final Responsible Party: | | Sub-Category: | Profane (PROF) |
| | | Additional Sub-Category: | |
| Copy of Response Sent to Consumer by Carrier?: | ○ Yes ○ No | | |
| Mediation with Carrier/Complainant?: | ○ Yes ○ No | Response Type: | |

Referral Information

Date Referred: 04/25/2007

Consumer Referral Letter | Agency Referral | Indecent | Ref

Referred To: Agency Name(s): Company Name(s):

**Exhibit G**

'ate Stamp and Return To
... AND & KNIGHT LLP

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In re Freedom of Information Act Request of | ) | |
| | ) | |
| Urban Radio I, L.L.C., | ) | FOIA Control No. 2008-239 |
| For Records Concerning Indecency Complaints | ) | Facility ID No. 28203 |
| and/or Proceedings Regarding WBLS(FM) | ) | |

TO: Office of General Counsel

**REVIEW OF FREEDOM OF INFORMATION ACTION**

FILED/ACCEPTED
APR - 2 2008
Federal Communications Commission
Office of the Secretary

**URBAN RADIO I, L.L.C.**

Charles R. Naftalin
Leighton T. Brown II
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Phone: (202) 457-7040
Fax: (202) 955-5564
Email: charles.naftalin@hklaw.com

April 2, 2008

*Its Attorneys*

**SUMMARY**

This application for review concerns the Commission's response to a Freedom of Information Act ("FOIA") request submitted by Urban Radio I, L.L.C. ("Urban Radio"), licensee of WBLS(FM), New York, New York. A license renewal application filed for WBLS on January 31, 2006, and accepted for filing on February 2, 2006, remains pending, even though the application is unopposed. Urban Radio submitted its FOIA request because it believes that the Commission's delay in granting WBLS's license renewal application may be based in part on alleged indecency complaints filed concerning WBLS programming.

In response to Urban Radio's FOIA request, the Commission provided six pages of documents, consisting of copies of three two-page Commission computer records concerning complaints alleging the broadcast of indecent programming by WBLS. In each of these records, the Commission redacted the same categories of information, relying solely, without explanation, on FOIA Exemption 6, which is for "personal information" generally of a medical nature.

Some of the Commission's redactions are utterly irrelevant to Exemption 6 (or any other FOIA exemption), for example, the regulatory status of the complaints. Other exemptions, such as names of FCC staff processing the complaints, at most are so remote from Exemption 6 as to require full disclosure under FOIA's broad disclosure requirements, as none of the exclusive exemptions contained in FOIA justify withholding this information. In addition, the Commission's response overtly violated FOIA because the Commission failed to even offer an explanation of its reasons for (1) redacting portions of its computer system pages and (2) withholding copies of the actual listener complaints, without even mentioning their existence. FOIA requires disclosure in all cases <u>unless</u> a specific exemption is justified by the FCC, which in this case never happened.

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND ....................1

II. SUMMARY OF THE ARGUMENT ....................3

III. APPLICABLE LEGAL STANDARDS ....................4

IV. THE COMMISSION IMPROPERLY REDACTED INFORMATION WHOLLY UNRELATED TO PERSONAL PRIVACY ....................8

V. THE COMMISSION IMPROPERLY REDACTED THE COMPLAINANTS' NAMES AND ADDRESSES ....................9

VI. THE COMMISSION IMPROPERLY REDACTED ITS EMPLOYEES' NAMES ....................14

VII. THE COMMISSION MUST PROVIDE UNREDACTED COPIES OF THE ACTUAL COMPLAINTS ....................17

VIII. CONCLUSION ....................18

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In re Freedom of Information Act Request of | ) | |
| | ) | |
| Urban Radio I, L.L.C., | ) | FOIA Control No. 2008-239 |
| For Records Concerning Indecency Complaints | ) | Facility ID No. 28203 |
| and/or Proceedings Regarding WBLS(FM) | ) | |

TO: Office of General Counsel

**REVIEW OF FREEDOM OF INFORMATION ACTION**

Urban Radio I, L.L.C. ("Urban Radio"), the licensee of WBLS(FM), New York, New York, through its attorneys, and pursuant to Sections 0.461[1] and 1.115[2] of the Commission's rules, hereby submits its application for review of the Commission's partial denial of a Freedom of Information Act[3] ("FOIA") request, through the improper redaction of information and the withholding of certain documents.

## I. Factual Background

On February 6, 2008, counsel for Urban Radio e-mailed a FOIA request to the Commission requesting "copies of any and all records concerning indecency complaints and/or proceedings regarding WBLS." Urban Radio's primary purpose for filing the FOIA request was to receive information regarding the Commission's failure to grant WBLS's license renewal

[1] 47 C.F.R. § 0.461.
[2] 47 C.F.R. § 1.115.
[3] 5 U.S.C. § 552.

application (File No. BRH-20060131AXZ), which was filed on January 31, 2006, accepted for filing on February 2, 2006, and, more than two years later, still remains "pending.[4]"

On February 7, 2008, counsel for Urban Radio received an e-mail from the Commission acknowledging receipt of Urban Radio's FOIA request and providing an anticipated response date by the Commission of March 6, 2008. After the Commission did not respond by the specified date, on March 14, 2008, counsel for Urban Radio received an e-mail from the Commission unilaterally extending the deadline for the Commission response by 10 working days, to March 20, 2008. On March 20, 2008, counsel for Urban Radio received a telephone call from William Knowles-Kellett, a Commission staff member, requesting a one-week extension of time with respect to the Commission's response to Urban Radio's FOIA request. On that same day, counsel for Urban Radio sent Mr. Knowles-Kellett an e-mail consenting to the requested one-week extension, and stating the understanding that the Commission would "fully respond to the [ ] FOIA request[] on or before March 27, 2008."[5]

On March 21, 2008, counsel for Urban Radio received by e-mail from Debbie Byrd, a Commission staff member in the Enforcement Bureau, Investigations and Hearings Division, the Commission's response to Urban Radio's FOIA request as an attached file.[6] The FOIA Response contained a cover letter from Gary Schonman, Acting Deputy Chief, Investigations and Hearings Division, Enforcement Bureau, stating that the Commission had "located six pages of documents responsive to your request, copies of which are enclosed." In addition, the letter

---

[4] Members of the FCC's staff had advised informally that indecency complaints from listeners were delaying FCC action on the WBLS license renewal application.

[5] The same understanding and procedures applied to the concurrently filed FOIA request of Urban Radio under FOIA Control No. 2008-239, under which a separate application for review is being filed today.

[6] Exhibit A is a copy of that attached file (the "FOIA Response").

stated that the Commission had "redacted information from those documents, where necessary, to protect individuals' personal privacy. *See* 5 U.S.C. §552(b)(6)."

The six pages provided in the FOIA Response consisted of three, two-page Commission records which appear to be copies of screens from the Commission's computer system (the "Complaints") regarding complaints received by the Commission concerning WBLS programming. For each of the Complaints, the Commission redacted the same categories of information, none of which are justifiable under FOIA, and all of which are crucial to the public's full understanding of the nature and status of the Complaints made against WBLS. These redactions include the full titles of the Complaints, the "Current Status" of the Complaints, the name of the Commission employee to which the Complaints were assigned, the name of the Commission employee for which the Complaints were "Closed By," the "Service Date[s]" of the Complaints, the "Indecency Referral Code[s]" of the Complaints, and the names and addresses of the individuals who submitted the Complaints.

In addition to redacting this crucial information from the Complaints, the Commission wholly failed to provide the actual complaints submitted, which underlie the processing of the three complaint forms.

## II. Summary of the Argument

The Commission's exclusive basis for the many redactions in the FOIA Response is FOIA Exemption 6. Exemption 6, related solely to protection of personal information against a "clearly unwarranted invasion of personal privacy" by disclosure of "personnel and medical files and similar files," is an entirely inappropriate and unwarranted basis for some of the redactions. Other redactions, at best, only implicate a *de minimis* privacy interest. Moreover, the public interest in the disclosure of this information clearly outweighs any privacy interest which could be found in the information. Further, the Commission's reliance on Exemption 6 was improper

because the Commission simply exerted a blanket exemption without providing any particularized justifications for withholding the information; indeed, without even attempting to offer an explanation of any kind.

In addition, the Commission's response violated FOIA because the Commission failed to provide, without justification or claim of exemption, certain documents that plainly exist in its files and were clearly within the scope of Urban Radio's request. For instance, although the Commission provided copies of certain of its internal computer records regarding the three Complaints, it failed to provide copies of the actual complaints. Presumably, the Commission possesses the Complaints or it could not have created the internal records which constitute the FOIA Response.

FOIA is a broad disclosure statute, under which records may be withheld from public inspection only if they clearly fit within the narrow, statutory exemptions provided for in FOIA. As the Commission's initial response failed to comply with these FOIA mandates, the Commission must now provide the information which it previously redacted from its response to Urban Radio's FOIA request. In addition, the Commission must provide copies of the actual complaints received by it which allege the broadcast of indecent programming by WBLS.

## III. Applicable Legal Standards

FOIA is a broad disclosure statute which evidences a "strong public policy in favor of public access to information in the possession of federal agencies."[7] It provides that "[e]ach agency *shall make available* to the public information" through regulatory procedures.[8] Congress provided that nothing in FOIA should be read to "authorize withholding of information

[7] *Cochran v. U.S.*, 770 F.2d 949, 954 (11th Cir. 1985)(quoting *Brown v. F.B.I.*, 658 F.2d 71, 73 (2d Cir. 1981)).
[8] 5 U.S.C. § 552(a)(emphasis added).

or limit the availability of records to the public, except as specifically stated" in the Act.[9] FOIA thus requires agencies to comply with requests to make their records available to the public unless the particular information in those records is exempted by clear statutory language.[10] Moreover, the nine exemptions to disclosure set forth in FOIA are to be construed as narrowly as possible to provide maximum access to agency information.[11] A government agency, therefore, must show that there is no genuine issue as to whether it properly invoked the statutory exemptions authorized under FOIA.[12] In sum, the disclosure requirements of FOIA must be construed broadly, the exemptions narrowly,[13] and the burden of proof is upon the agency seeking to invoke an exemption from mandatory disclosure.[14]

Here, the Commission, without explanation, solely relied on FOIA Exemption 6 to justify its redaction of information from the documents provided to Urban Radio. Under Exemption 6, a federal agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."[15] Therefore, in determining the availability of Exemption 6 for the withholding of records, the threshold question is whether the requested information is contained in personnel, medical, or similar files.[16] "The common denominator of files covered by Exemption 6 has been described as the

---

[9] 5 U.S.C. § 552(c); *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).
[10] 5 U.S.C. §§ 552(a) and (b); *Akin, Gump, Strauss, Hauer & Feld v. Dep't of Justice*, 503 F.Supp.2d 373, 378 (D.D.C. 2007); *Oglesby v. Dep't of Army*, 79 F.3d 1172, 1176 (D.C.Cir. 1996).
[11] *Akin*, 503 F.Supp.2d at 378; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir. 1973).
[12] *Akin*, 503 F.Supp.2d at 378.
[13] *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)(quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1142 (D.C.Cir. 1975)).
[14] *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80 (1973).
[15] 5 U.S.C. § 552(b)(6).
[16] *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C.Cir. 2002)(citing *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982)).

extent to which they contain 'intimate details' of a 'highly personal' nature."[17] As a consequence, although Exemption 6 "was intended to shield against a variety of embarrassing disclosures, the test is not merely whether the information is in some sense personal but whether it is 'of the same magnitude as highly personal or as intimate in nature as that at stake in personnel and medical records.'"[18]

The words "similar files" mean that the records in question must, like medical and personnel files, contain information of a personal or confidential nature,[19] and the relevant consideration is "whether the privacy interests in the information sought are similar to privacy interests in personnel and medical files . . ."[20] Although diverse documents have been held to be "similar files" within the exemption, in each case the court has focused on the personal nature of the information sought.[21]

If the requested information is determined to be contained in a personnel, medical or similar file, the issue becomes "whether the information is of such a nature that its disclosure would constitute a clearly unwarranted privacy invasion."[22] The use of the term "clearly" in this qualification, "which was not inadvertent but purposeful on the part of Congress, was, itself, a 'clear' instruction to the Courts that, in determining the issue whether a disclosure would *constitute* 'a clearly *unwarranted invasion of personal privacy,*' *they should* 'tilt the balance in

---

[17] *Kurzon v. Dep't of Health and Human Servs.*, 649 F.2d 65, 68 (1st Cir. 1981).
[18] *Id.* (quoting *Bd. Of Trade of the City of Chicago v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 398 (D.C.Cir. 1980)).
[19] *Madeira Nursing Center, Inc. v. NLRB*, 615 F.2d 728 (6th Cir. 1980).
[20] *Miami Herald Pub. Co. v. Small Bus. Admin.*, 670 F.2d 610, 615 (5th Cir. Unit B 1982); *Harbolt v. Dep't of State*, 616 F.2d 772, 774 (5th Cir. 1980).
[21] *Miami Herald*, 670 F.2d at 615.
[22] *Norton*, 309 F.3d at 32 (citing *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 598 (1982)).

favor of disclosure.'"[23] "By restricting the reach of exemption 6 to cases where the invasion of privacy caused by disclosure is not only unwarranted but clearly so, Congress has erected an imposing barrier to nondisclosure under this exemption."[24]

In addressing whether the disclosure of information is a "clearly unwarranted invasion of privacy," courts employ a balancing test, weighing an individual's right to protection of privacy against the public's right to disclosure of government information.[25] Exemption 6 does not protect every incidental invasion of privacy. Rather, only those invasions that implicate private personal details my be precluded.[26] Therefore, for such information to be protected, it must "compromise a substantial, as opposed to *de minimis*, privacy interest."[27]

If a substantial privacy interest is at stake, that interest must be weighed "against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy."[28] The public interest weighs heavily in favor of disclosures that would serve the basic purpose of the FOIA,[29] which is the opening of "agency action to the light of public scrutiny"[30] and the enabling of an "informed citizenry."[31] In conducting this analysis, the court is guided by the instruction that, "under Exemption 6, the presumption in favor of disclosure is as strong as can be found anywhere in the

---

[23] *Robles v. Environmental Protection Agency*, 484 F.2d 843, 846 (4th Cir. 1973)(quoting *Getman v. N.L.R.B.*, 450 F.2d 670, 674 (D.C.Cir. 1971)).
[24] *Kurzon*, 649 F.2d at 67.
[25] *Cochran*, 770 F.2d at 955.
[26] *Akin*, 503 F.Supp.2d at 382; *see Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 500 (1994)(explaining that the relevant privacy interest is an "individual's interest in controlling the dissemination of information regarding personal matters").
[27] *Norton*, 309 F.3d at 33 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir. 1989)).
[28] *Horner*, 879 F.2d at 874.
[29] *Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994).
[30] *Dep't of State v. Ray*, 502 U.S. 164, 175 (1991)(quoting *Rose*, 425 U.S. at 372).
[31] *NLRB v. Robbins Tire*, 437 U.S. 214, 242 (1978).

Act."[32] Consequently, "[i]f the balance is equal the court should tilt the balance in favor of disclosure."[33]

## IV. The Commission Improperly Redacted Information Wholly Unrelated to Personal Privacy

For each of the three records provided to Urban Radio, the Commission redacted a portion of the record's title,[34] the "Indecency Referral Code," and the "Current Status" of each Complaint. The Commission cannot rely on any FOIA exemption, let alone Exemption 6, to justify withholding these types of information. FOIA is a broad disclosure statute[35] which requires federal agencies to comply with requests to make their records available to the public unless the particular information in those records is exempted by clear statutory language.[36] *Moreover, the exemptions set forth in FOIA are to be construed as narrowly as possible.*[37]

This information does not concern an individual. Even incorrectly assuming that a substantial privacy interest is at stake, the public interest in the disclosure of these records would significantly outweigh any potential privacy interest. Urban Radio, and the public as a whole, has a substantial interest in knowing why the Commission has delayed granting an important broadcast license renewal application, for two years and counting, of a major FM radio station serving New York City. Clearly, the status of the Commission's consideration of the alleged indecency complaints bears upon this question.

Under Exemption 6, a federal agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

---

[32] *Wash. Post Co. v. Dep't of Health and Human Servs.*, 690 F.2d 252, 261 (D.C.Cir. 1982).
[33] *Cochran*, 770 F.2d at 955.
[34] As produced by the Commission, the title of each record is "Complaint for ________."
[35] *Cochran*, 770 F.2d at 954 (quoting *Brown*, 658 F.2d at 73).
[36] 5 U.S.C. §§ 552(a) and (b); *Akin*, 503 F.Supp.2d at 378; *Oglesby*, 79 F.3d at 1176.
[37] *Akin*, 503 F.Supp.2d at 378; *Vaughn*, 484 F.2d at 823.

privacy."[38] For records to be covered by Exemption 6, they must contain "intimate details" of a "highly personal" nature."[39] It is beyond dispute that the title of an administrative agency's record, a referral code contained in such a record, and the current status of the matter addressed in that record are not "intimate details" of a "highly personal" nature. Consequently, the nondisclosure of this entirely regulatory information cannot be justified under Exemption 6.

## V.     The Commission Improperly Redacted the Complainants' Names and Addresses

Although, in certain circumstances, an individual has a privacy interest in his or her name and address,[40] FOIA Exemption 6 requires more than just a demonstrated privacy interest; it requires a showing that a disclosure of the names and addresses would result in a *"clearly unwarranted* invasion of personal privacy."[41] In fact, the Supreme Court has explicitly rejected the position that "disclosure of a list of names and other identifying information is inherently and always a significant threat to the privacy of the individuals on the list. Instead, . . . whether disclosure of a list of names is a 'significant or a *de minimis* threat depends upon the characteristic(s) revealed by virtue of being on the particular list, and the consequences likely to ensue."[42] As a result, courts have not hesitated in the past to allow the disclosure of names and addresses when there has been a strong public interest in favor of disclosure and when a significant privacy interest other than the release of the names or addresses was lacking.[43]

Here, the Commission withholds the names and addresses of the complainants, but it took no precautions to assure privacy at the time the information was obtained, and it has not even

---

[38] 5 U.S.C. § 552(b)(6).

[39] *Kurzon*, 649 F.2d at 68.

[40] *See, e.g., Reed v. N.L.R.B.*, 927 F.2d 1249, 1251 (D.C.Cir. 1991).

[41] 5 U.S.C. § 552(b)(6)(emphasis added).

[42] *Ray*, 502 U.S. at 176, n.12 (quoting *Horner*, 879 F.2d at 877).

[43] *Aronson v. Dep't of Housing and Urban Development*, 822 F.2d 182, 186 (1st Cir. 1987); *see Kurzon v. Dep't of Health and Human Services*, 649 F.2d 65 (1st Cir. 1981)(ordering release of names and addresses of unsuccessful grant applicants in the absence of a showing of stigma).

alleged that any complainant requested privacy.[44] The Commission's failure to make a promise, either express or implied, of anonymity as to the identities of complainants greatly weakens any privacy argument it may now choose to make.[45]

Form 475B, the Commission's "Obscene, Profane, and/or Indecent Material Complaint Form," neither promises nor implies that a complaint will be kept confidential.[46] Form 475B contains a link, "Privacy Act and Paperwork Reduction Act," to a webpage which states that:

> ...when a record in this system involves an informal complaint filed against a broadcaster, common carrier, programming providers, satellite services, telemarketers, *etc.*, the complaint may be forwarded to the defendant carrier for a response . . . When an order or other Commission-issued document that includes consideration of informal complaints filed against broadcasters, common carriers, programming providers, satellite services, telemarketers, *etc.*, is entered by the FCC to implement or enforce the Communications Act, pertinent rule, regulation, or order of the FCC, the complainant's name may be made public in that order or document.[47]

The Commission expressly warned complainants that their complaints would not be held in confidence, unless confidentiality is requested explicitly.[48] Thus, complainants were on notice of such a lack of confidentiality, and therefore, would have no reasonable right to object to disclosure. If the Commission intended otherwise, it could have taken steps at the time it created the complaint form to assure complainants that their responses would be confidential.[49] The Commission did not.

---

[44] *See Southern Utah Wilderness Alliance, Inc. v. Hodel*, 680 F.Supp. 37, 39 (D.D.C. 1988); *Alliance for the Wild Rockies v. Dep't of the Interior*, 53 F.Supp.2d 32, 37 (D.D.C. 1999) (finding it remarkable that defendants objected to disclosure of the names and addresses of the commenters since the notice of proposed rulemaking made no reference to any limitations on the public's ability to review the comments submitted).

[45] *Kurzon*, 649 F.2d at 70 (finding that the agency's failure to make a promise, either express or implied, of anonymity as to applicant identities did "did not aid the government's position . . .").

[46] *See* http://fjallfoss.fcc.gov/fcc475B.cfm.

[47] http://www.fcc.gov/cgb/privacy-pra.html (emphasis added)

[48] *Ibid.*

[49] *See People for the Amer. Way Found. v. Nat'l Park Serv.*, 503 F.Supp.2d 284, 306 (D.D.C. 2007).

Even if the Commission had promised confidentiality to complainants, this fact would not be determinative. Although a promise of confidentiality is a factor to be considered, "it is not enough to defeat the right of disclosure that the agency 'received the file under a pledge of confidentiality to the one who supplied it. Undertakings of that nature cannot, in and of themselves, override the Act.'"[50]

The Commission redacted the names and addresses of those individuals who, through the submission of complaints, sought action against WBLS. In so doing, the Commission failed to provide a particularized justification for withholding this information. Rather, it simply cited FOIA Exemption 6, even though "Exemption 6 does not provide blanket anonymity for private citizens who write letters requesting assistance from government officials. .."[51] Instead, an agency's decision to withhold identifying information must be made on a case-by-case basis,[52] which is the opposite of the blanket redactions in the FOIA Response.

Not only is a government agency forbidden to provide blanket immunity, it must do more than speculate as to the potential harm of disclosing the information.[53] There must be a "substantial probability that the disclosure will lead to the threatened invasion,"[54] which requires

---

[50] *Robles*, 484 F.2d at 846 (quoting *Ackerly v. Ley*, 420 F.2d 1336, 1339-1340 (D.C.Cir. 1969)).
[51] *Landmark Legal Found. v. I.R.S.*, 87 F.Supp.2d 21, 27 (D.D.C. 2000).
[52] *See Wild Rockies*, 53 F.Supp.2d at 37 (decision requiring the disclosure of the names and addresses of individual commenters partly due to the fact that the "defendants' decision to withhold the identifying information was not made on a commenter by commenter basis.").
[53] *Hodel*, 680 F.Supp. at 39 ("Exemption 6 does not take into account unsubstantiated speculation about possible secondary effects that may follow release.")(citing *Arieff v. Dep't of the Navy*, 712 F.2d 1462, 1468 (D.C.Cir. 1983)); *Fortson v. Harvey*, 407 F.Supp.2d 13, 17 (D.D.C. 2005)(concluding that the potential harm in disclosing the statements advanced by the Army – that the statements would unfairly invade the witnesses' privacy rights and may jeopardize the witnesses' promotional opportunities, favorable personnel evaluations, or create an otherwise hostile work environment – was "pure speculation and therefore an insufficient basis for withholding the statements.").
[54] *Horner*, 879 F.2d at 878.

that "'[i]njury and embarrassment' must be found in the material itself, as released . . ."[55] Here, the Commission simply stated that the information was redacted "to protect individuals' personal privacy." Without a more particularized assertion of the affected individuals' expectations of privacy with respect to the complaints and other information provided to the Commission, no more than a *de minimis* privacy interest can be found here.[56]

Moreover, "when a citizen petitions his government to take some action, courts have generally declined to find the identity of the citizen to be information that raises privacy concerns under exemption 6."[57] The voluntary nature of the complainants' comments to the Commission strengthens the inference that the disclosure of their identities will not infringe upon a substantial privacy interest.[58] Clearly, then, the complainants' privacy interests in their names and addresses are minimal[59] since the slight informational content of names and addresses severely limits the degree of intrusion upon the complainants' privacy.[60]

Furthermore, even assuming the complainants have some, slight, privacy interest in keeping their names and addresses private, the public interest in full disclosure of the written complaints clearly outweighs the complainants' privacy interests, if any, in nondisclosure of their names and addresses. In determining the public interest, the extent to which disclosure will further the core purpose of FOIA -- which is to increase the public's understanding of

---

[55] *Hodel*, 680 F.Supp. at 39 (citing *Arieff*, 712 F.2d at 1468).
[56] *See Landmark*, 87 F.Supp.2d at 28.
[57] *People for the Amer. Way*, 503 F.Supp.2d at 306.
[58] *See, e.g., Wild Rockies*, 53 F.Supp.2d at 37 (court's decision rested in part on the fact that the comments, which bear the commenters' names and addresses, were submitted voluntarily).
[59] *See, e.g., Fortson*, 407 F.Supp.2d at 17 (holding that the witnesses' privacy interest in their statements pertaining to an equal employment opportunity complaint made by the FOIA requester against her supervisors was "minimal.").
[60] *Kurzon*, 649 F.2d at 69 (finding that the degree of intrusion was limited by the slight informational content of the requested material, which consisted of the names and business addresses of unsuccessful applicants of research grants.)

governmental operations and activities – is dispositive.[61] In this instance, the public has much to learn from the disclosure of the complainants' names and addresses about the Commission's process for handling indecency complaints. The public would be able to determine how the Commission uses the written complaints in reaching its decision; whether the Commission gives greater weight to complaints submitted by individuals living in particular areas, or who work in certain fields, over the complaints of others; and whether the Commission distinguishes between multiple complaints submitted by a single complainant when determining whether to pursue an indecency complaint.[62] Also, the identity of the complainants could be probative of their credibility as witnesses of alleged indecency violations, for example, their public or other history of honesty and veracity might be readily determinable.

Just as critically, there is a considerable public interest in assuring governmental accountability. An agency decision as to whether to hold a radio station liable for indecency, which must arise from written complaints submitted by members of the public, clearly warrants full disclosure of those complaints, including the names and addresses of the complainants.[63]

---

[61] *Dep't of Justice v. Reporters' Comm'n for Freedom of the Press*, 489 U.S. 749, 775 (1989).
[62] *See Wild Rockies*, 53 F.Supp.2d at 37 (finding that the public had much to learn about the agency's rulemaking process from the disclosure of the commenters' names and addresses; "The public will be able to determine how the defendants use the written comments in reaching a final rule; whether the defendants give greater weight to the comments submitted by experts in the field over the comments of laypeople; whether the defendants distinguish between multiple comments submitted by a single contributor when quantifying public sentiment; and whether the defendants give gretaer weight to the comments submitted by residents of the Bitterrot region and the outlying regions than to the comments submitted by those who do not live within close proximity to the Bitterroot region.").
[63] *See Lardner v. U.S. Dep't of Justice*, 2005 WL 758267, at *18 (D.D.C. Mar.31, 2005) (holding public interest in identifying those who are able to exert influence on the presidential pardon power outweighed modest privacy interest); *Judicial Watch of Florida, Inc. v. U.S. Dep't of Justice*, 102 F.Supp.2d 6, 18 (D.D.C. 2000) (explaining "[d]epriving the public of knowledge of the writer's identity would deprive the public of a fact which could suggest that their Justice Department had been steered by political pressure rather than by the relevant facts and law"); *and Wild Rockies*, 53 F.Supp.2d at 36-37 (holding names and addresses of individuals' who

After all, "[p]ublic oversight of agency action [ ] serves a critical public function by protecting against agency overreaching and abuse of discretion."[64]

Finally, it is immaterial that Urban Radio, a media company, is the party which made the FOIA request. "[T]he privacy test turns on the nature of the information sought and not on the identity of the seeker. It therefore is the release of the information itself . . . that must create the unwarranted invasion of personal privacy and not the fact that it is [a media company] that happens to be asking for it."[65] "Moreover, . . . 'inquiry by news media or other interested parties about any particular [individual] is not the sort of invasion of privacy envisioned by Exemption 6.'"[66] Accordingly, "the mere threat of media attention does not suffice to draw the protective cloak of exemption 6 over information that happens to be newsworthy."[67]

## VI. The Commission Improperly Redacted Its Employees' Names

The Commission improperly relied upon Exemption 6 to justify the redaction of the names of the staff members to which the Complaints were assigned. This type of information is not protected by Exemption 6,[68] as an employee's name alone does not make a document a personnel, medical, or similar file.[69] The withheld information merely associates the unnamed

---

submitted written comments on proposed rulemaking regarding the reintroduction of the grizzly bear into the Bitterroot ecosystem could not be withheld pursuant to Exemption 6 because of public interest in disclosure).

[64] *Wild Rockies*, 53 F.Supp.2d at 37.

[65] *Wash. Post Co. v. Dep't of Agriculture*, 943 F.Supp. 31, 36 (D.D.C. 1996).

[66] *Wash. Post Co. v. Dep't of Agriculture*, 943 F.Supp. at 36 (quoting *Nat'l Ass'n of Atomic Veterans v. Dir., Defense Nuclear Agency*, 583 F.Supp. 1483, 1487 (D.D.C. 1984)).

[67] *Wash. Post Co. v. Dep't of Agriculture*, 943 F.Supp. at 36.

[68] *Stern v. Small Bus. Admin.*, 516 F.Supp. 145, 149 (D.D.C. 1980)(finding as improper the redaction of the names of government employees interviewed for a report on a civil rights compliance investigation made by the defendant).

[69] *Gordon v. FBI*, 388 F.Supp.2d 1028, 1040 (N.D.Cal. 2005)(finding as improper the redaction of the names of lower-level government officials who worked on the TSA's aviation watch lists); *Leadership Conf. on Civil Rights v. Gonzales*, 404 F.supp.2d 246, 257 (D.D.C. 2005)(finding that the names or work telephone numbers of Justice Department paralegals are not similar to a "personnel" or "medical" file).

employee "with business of the agency, and not with any intimate details or other aspects of their personal lives."[70] This fact, that the employees' names are not similar to personnel or medical files, alone renders Exemption 6 inapplicable.[71] Accordingly, the Commission must disclose the names of its employees because it failed to meet this threshold requirement of Exemption 6.[72]

As noted above, both the House and Senate reports on the bill which became FOIA indicate that the real thrust of Exemption 6 is to guard against unnecessary disclosure of files which would contain "intimate details" of a "highly personal" nature.[73] "The giving of names . . . is a very much lower degree of disclosure" since "a bare name . . . give[s] no information about an individual which is embarrassing."[74] Therefore, even assuming *arguendo* that the disclosure of the employees' names constitutes disclosure of a "file" within the meaning of Exemption 6, "the invasion itself is to a very minimal degree."[75] Moreover, the provision of these names would merely disclose the fact that the employees carried out the responsibilities of their jobs by processing the Complaints.[76] "An individual who 'processes' a document does not have a reasonable expectation of privacy because the act is not one likely to cause embarrassment nor is it information of a personal nature."[77] As a result, the Commission has also failed to meet its burden of establishing that a substantial privacy interest is at stake.

---

[70] *Stern*, 516 F.Supp. at 149; *Gonzales*, 404 F.supp.2d at 257 ("A name and work telephone number is not personal or intimate information . . . that normally would be considered protected information under FOIA Exemption 6").
[71] *Leadership Conf. on Civil Rights v. Gonzales*, 421 F.Supp.2d 104, 107 (D.D.C. 2006).
[72] *See Gonzales*, 404 F.supp.2d at 257.
[73] *Getman v. N.L.R.B.*, 450 F.2d 670, 675 (D.C.Cir. 1971).
[74] *Id.*
[75] *Id.*
[76] *Fine v. Dep't of Energy*, 823 F.Supp. 888, 900 (D.N.Mex. 1993)(requiring full disclosure of the requested records after concluding that "[t]he appearance of a person's name and initials [ ] only indicates he or she carried out work responsibilities at the direction of DOE supervisors.")
[77] *Fine*, 823 F.Supp. at 897 (citing *Ditlow v. Schultz*, 517 F.2d 166 (D.C.Cir. 1975)).

Furthermore, the Commission cannot rely on Exemption 6, regardless of the underlying facts, because *it apparently decided, without any explicit justification, to withhold the names of* all employees who handled the processing of the Complaints. This clearly suggests that the Commission has adopted a categorical rule that the names of all employees handling complaints will always be exempt from disclosure pursuant to Exemption 6. Such a categorical rule, however, is invalid because the "scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted."[78] Even if "federal employees have an identifiable privacy interest in avoiding disclosures of information that could lead to annoyance or harassment," this fact would "not authorize a 'blanket exemption' for the names of all government employees in all records."[79] To justify withholding records under Exemption 6, "the federal agency must show that the threat to employees' privacy is real rather than speculative."[80] Here, the Commission has not even attempted to make this showing.

Finally, even assuming a Commission employee has some, slight, privacy interest in keeping his or her name private, and that the appearance of a name alone makes a document a "similar file" for purposes of Exemption 6, the Commission must disclose these names "since the actions investigated and reported were carried out in the official capacities of the [ ] personnel, and any privacy interest that may be involved would appear to be outweighed by the public

[78] *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 581 (D.C.Cir. 1996)(holding that "a categorical rule forbidding disclosure of the names of lower-level FBI agents in all activities is invalid.").
[79] *Judicial Watch, Inc. v. Dep't of the Army*, 402 F.Supp.2d 241, 251 (D.D.C. 2005)(citing *Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 1338 (D.C.Cir. 1980); *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487 (D.C.Cir. 1980)).
[80] *Judicial Watch*, 402 F.Supp.2d at 251 (citing *Rose*, 425 U.S. at 380, n.19); *see also Fine*, 823 F.Supp. at 900 ("Invoking Exemption 6 requires 'threats to privacy interests more palpable than mere possibilities.").

interest in disclosure of such information."[81] Disclosing the names of government employees who are making important governmental determinations serves FOIA's core purpose of contributing to the public's understanding of how its government operates. "Knowing *who* is making government policy . . . is relevant to understanding *how* the government operates."[82]

It has been twenty-six months since WBLS's license renewal application was accepted for filing. WBLS (and other similarly-situated licensees) has not been provided any information regarding the cause of this substantial and unreasonable delay. The public clearly "has an interest in knowing who – and at what level of the government – is working on this significant problem that affects many Americans."[83] Since "official information that sheds light on an agency's performance of its statutory duties falls squarely within the central purpose of FOIA," which is to "open agency action to the light of public scrutiny,"[84] the Commission must provide a complete and timely response to Urban Radio's statutorily-compliant FOIA request.

**VII. <u>The Commission Must Provide Unredacted Copies of the Actual Complaints</u>**

Although the Commission provided copies of its computerized records regarding three alleged indecency complaints concerning WBLS, it failed to provide copies of the actual complaints. Presumably, such complaints exist, and are in the Commission's possession, or the Commission could not have created the internal records which it did provide in response to Urban Radio's FOIA request.

---

[81] *Stern*, 516 F.Supp. at 149 (finding as improper the redaction of the names of government employees interviewed for a report on a civil rights compliance investigation made by the defendant).
[82] *Gordon*, 388 F.Supp.2d at 1041 (emphasis in original).
[83] *Id.*
[84] *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 894 (D.C.Cir. 1995).

As noted, FOIA is a broad disclosure statute which evidences a "strong public policy in *favor of public access to information in the possession of federal agencies.*"[85] FOIA requires federal agencies to comply with requests to make their records available to the public unless the particular information in those records is exempted by clear statutory language.[86] Here, the Commission has failed to even attempt to rely upon one of FOIA's explicit, and exclusive, exemptions in order to justify withholding these complaints. As a result of the Commission's failure to provide an adequate response[87] by either providing copies of the original complaints or properly, and explicitly, relying on a statutory exemption,[88] this information has been improperly withheld, and thus must be fully disclosed now.

## VIII. Conclusion

Based upon the foregoing, Urban Radio respectfully requests that the Commission grant this application promptly by providing the information which it previously redacted from its response to Urban Radio's FOIA request. In addition, the Commission should provide copies of the actual complaints received by it which allege the broadcast of indecent programming by WBLS. Under FOIA, Urban Radio and the public have the statutory right to all of this information.

---

[85] *Cochran*, 770 F.2d at 954 (quoting *Brown v. F.B.I.*, 658 F.2d 71, 73 (2d Cir. 1981)).
[86] 5 U.S.C. §§ 552(a) and (b); *Akin*, 503 F.Supp.2d at 378; *Oglesby*, 79 F.3d at 1176.
[87] *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151, n.12 (1989)("Even when an agency does not deny a FOIA request outright, the requesting party may still be able to claim 'improper' withholding by alleging that the agency has responded in an inadequate manner.")
[88] *Id.* ("It follows from the exclusive nature of the § 552(b) exemption scheme that agency records which do not fall within one of the exemptions are 'improperly' withheld.").

Respectfully submitted,

URBAN RADIO I, L.L.C.

By: ____________________

Charles R. Naftalin
Leighton T. Brown II
*Holland & Knight LLP*
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Phone: (202) 457-7040
Fax: (202) 955-5564
Email: charles.naftalin@hklaw.com

April 2, 2008

*Its Attorneys*

**EXHIBIT A**



**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau, Investigations and Hearings Division
445 12th Street, S.W., Room 4-C330
Washington, D.C. 20554

March 21, 2008

*Via email to leighton.brown@hklaw.com*

Leighton T. Brown, Esq.
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Re: Freedom of Information Act Request
FOIA Control No. 2008-239

Dear Mr. Brown:

This letter responds to your recent request, submitted under the Freedom of Information Act ("FOIA"). Therein, you request "copies of any and all records concerning indecency complaints and/or proceedings regarding WBLS."

We have located six pages of documents responsive to your request, copies of which are enclosed. We have redacted information from those documents, where necessary, to protect individuals' personal privacy. *See* 5 U.S.C. §552(b)(6). If you believe we have failed to locate other responsive documents, please describe the documents with particularity, and we will endeavor to locate them.

If you believe this to be a denial of your request, you may file an application for review with the FCC's Office of General Counsel within thirty (30) days of the date of this letter. 47 C.F.R. §§ 0.461(j) and 1.115. If you have further questions, please feel free to call William Knowles-Kellett at (717) 338-2505.

Sincerely,

Gary Schonman
Acting Deputy Chief
Investigations and Hearings Division
Enforcement Bureau

EB-06-IH-5300

# COMPLAINT FOR [redacted]

Complaint Type:Broadcast Account Type: Residential ☐ Congressional Complaint ☐ C

| | | | |
|---|---|---|---|
| IC Number: | 06-WB12142462 | Case Type: | Complaint |
| Date Received: | 08/24/2006 | Complainant: | [redacted] |
| Date Entered: | 08/24/2006 | Date Assigned: | 08/24/2006 |
| Entered By: | FCC_NOTES01 | Date Reassigned: | |
| Assigned To: | [redacted] | Service Date: | [redacted] |
| Date Closed: | 08/28/2006 | Response Date: | |
| Closed By: | [redacted] | Original Analyst: | |
| Close Letter Needed? | ○ Yes ● No | Purged By: | Purged Date: |
| | | Removed By: | Removed Date: |
| Supervisor Check: | ○ Yes ● No | Indecency Referral Code: | [redacted] |

Current Status: [redacted]

*Associated Case:*

Complaint Summary:
The Wendy Williams Show. They are always talking about sex, describing different sexual positions or acts. Drinking alcohol on the show. Children can be listening to this at that time of day. Thank you

Apparent Carrier(s):

☐ Yes<<< Check here if you wish to serve both a Wireline and Wireless carrier.

Problem Number:

| | | | |
|---|---|---|---|
| Title: None | First Name: [redacted] | Middle Initial: | Last Name: [redacted] |
| Contact Name: | [redacted] | Best Time to Call: | |
| Contact Number: | Ext. | Consumer's Telephone Number: | Ext. |
| Fax Number: | | TTY Number: | |
| Email Address: | | Internet Address: | |
| PO Box: | | Address: | [redacted] |
| City: | Mt. Vernon | State: NY | Zip: 10550 |

| | |
|---|---|
| On Behalf Of: | |
| Company Name: | |
| Party's Name: | Relationship with the Party: |
| Party's Contact Number: Ext. | PO Box:<br>Address:<br>City:State:Zip: |
| Other Party that can be contacted? | |
| Name: | Relationship: |
| Contact Number: Ext. | Address:<br>City:, State: Zip: |
| **Amount of credit FCC effort generated: | Duplicate Credit Checked: ○ Yes ● No |

Have you paid any of the disputed charges?

Did the company billing for these charges adjust or refund some or all of the disputed charges?
If yes, what was the amount of the adjustment or refund?
a. Name of carrier(s) or company(ies) involved in your complaint: SBC/Yahoo

b. Telephone number for the carrier(s) or company(ies) involved with your complaint, including area code: Phone: Ext
c. Which type of service is involved with your complaint:

TCPA Information from 475

1. the telephone number of the individual or company who called or faxed you: Ext
2. your telephone number(s) on which the call or fax was received: Ext
3. a description of the telemarketing call, pre-recorded message, or unsolicited fax, including an identification of the company whose products or services were being advertised, and any phone numbers that were included in the call or fax:
4. the "opt-out" number(s) provided in the call(s) or on the fax(es): (List number(s) given in the call(s) or fax(es) for you to contact if you do not want to receive any additional calls or faxes.) Ext
5. Have you: (a) purchased anything from the company being advertised in the call or fax; (b) made an inquiry or application to that company; or (c) given consent to the company to send you the call or fax? If so, please describe and state when you had such contact with the company.

Broadcast Information from 475B

(1) Date of Program: Anytime
(2) Time of Program: 2-7pm
(3) Network: unknown
(4) Call Sign, Channel OR Frequency of the station on which you viewed/heard the material: WBLS-107.5
(5) City and State Where Program Was Viewed: Mt. Vernon, NY
(6) Name of Program or DJ/Personality/Song/Film: Wendy Williams

Updated?: ○ Yes ● No

## ANALYSIS SECTION

| | | | |
|---|---|---|---|
| Correspondence Type: | ● Complaint ○ Inquiry | Source Code: | Internet |
| Apparent Carrier(s): | | Re-Serve Carrier(s): | |
| Responding Carrier(s): | | Assigned Subject Code: | Programming Issues |
| | | Program Type: | FM |
| Activity Code: | Direct | Assigned Code Acronym: | PROG |
| Final Responsible Party: | | Sub-Category: | Content Criticism (PCCR) |
| Copy of Response Sent to Consumer by Carrier?: | ○ Yes ○ No | | |
| Mediation with Carrier/Complainant?: | ○ Yes ○ No | Response Type: | |

**Referral Information**

Date Referred: 08/28/2006
Referred To: Agency Name(s): FCC-Enforcement Bureau
Company Name(s):

Consumer Referral Letter | Agency Refer
Create TCPA
Indecent Dismissal | Indecent - Re

EB-07-TV-9563

# COMPLAINT FOR [redacted]

Complaint Type: Broadcast

Account Type: Residential

Congressional Complaint

| | | | |
|---|---|---|---|
| IC Number: | 07-WB13575100 | Case Type: | Complaint |
| Date Received: | 12/04/2007 | Complainant: | [redacted] |
| Date Entered: | 12/04/2007 | Date Assigned: | 12/05/2007 |
| Entered By: | OSCARServer | Date Reassigned: | |
| Assigned To: | [redacted] | Service Date: | [redacted] |
| Date Closed: | 12/06/2007 | Response Date: | |
| Closed By: | [redacted] | Original Analyst: | |
| Close Letter Needed? | Yes No | Purged By: | Purged Date: |
| | | Removed By: | Removed Date: |
| Supervisor Check: | Yes No | Indecency Referral Code: | [redacted] |

*Current Status:* [redacted]

*Associated Case:*

Complaint Summary:

this program is obscene. besides being a drug user for over 20 years (she has written a book aout it and a movie of it is coming out) she promotes on the airways pro abortion to young girls that call in for advice hour. yes she has an advice hour including medical advice even though she is not qualified. even 2 weeks ago she explained to her audience how to use drugs and there is apparently some kind of new drug out there that you sniff and she wanted the public to call in to tell her about it. she has a convicted felon (drug use) as her side kick who is very anti gay as she is. wendy williams continually exposes without fact every man or woman that she does not like to be gay. Rumor has it Will Smith the actor wants to buy the station because she constantly trys to "out" him . wendy willaims and her staff continually drink while Broadcasting and she makes no secret about it. this behaviour has a serious affect on all people especially the young the advice to have an abortion I beleive is reprehensible. the airways belong to the people and if you request her broadcasts for the last 6 months or listen to her you will see that she is violating the fcc rules. as far as i am concerned. she constantly ridicules her staff calling them donkeys on the airways and even accused an intern on the airways of being a thief. her mission is to destruct everyone that gets in her way. it is so disgusting that last week she said a friend of hers smell and had left a used tampon in her "flap" What are the airways coming to?

Apparent Carrier(s):

Yes<<< Check here if you wish to serve both a Wireline and Wireless carrier.

| | | | |
|---|---|---|---|
| Problem Number: | | | |
| Title: None | First Name: [redacted] | Middle Initial: [redacted] | Last Name: [redacted] |
| Contact Name: | [redacted] | Best Time to Call: | |
| Contact Number: | [redacted] | Consumer's Telephone Number: | Ext. |
| Fax Number: | | TTY Number: | |
| Email Address: | [redacted] | Internet Address: | |
| PO Box: | | Address: | [redacted] |
| City: | Upper Montclair | State: NJ | Zip: 07043 |

| | |
|---|---|
| On Behalf Of: | |
| Company Name: | |

| Party's Name: | Relationship with the Party: |
|---|---|
| Party's Contact Number: Ext. | PO Box:<br>Address:<br>City:State:Zip: |
| Other Party that can be contacted? | |
| Name: | Relationship: |
| Contact Number: Ext. | Address:<br>City:, State: Zip: |
| **Amount of credit FCC effort generated: | Duplicate Credit Checked: ○ Yes ● No |

Have you paid any of the disputed charges?

Did the company billing for these charges adjust or refund some or all of the disputed charges?

If yes, what was the amount of the adjustment or refund?

a. Name of carrier(s) or company(ies) involved in your complaint Time Warner Cable

b. Telephone number for the carrier(s) or company(ies) involved with your complaint, including area code: Phone: Ext:

c. Which type of service is involved with your complaint:

TCPA Information from 475

1. the telephone number of the individual or company who called or faxed you: Ext:

2. your telephone number(s) on which the call or fax was received: Ext:

3. a description of the telemarketing call, pre-recorded message, or unsolicited fax, including an identification of the company whose products or services were being advertised, and any phone numbers that were included in the call or fax:

4. the "opt-out" number(s) provided in the call(s) or on the fax(es): (List number(s) given in the call(s) or fax(es) for you to contact if you do not want to receive any additional calls or faxes.) Ext:

5. Have you: (a) purchased anything from the company being advertised in the call or fax; (b) made an inquiry or application to that company; or (c) given consent to the company to send you the call or fax? If so, please describe and state when you had such contact with the company.

Broadcast Information from 475B

(1) Date of Program: ongoing

(2) Time of Program: 2pm-7pm

(3) Network: Abis

(4) Call Sign, Channel OR Frequency of the station on which you viewed/heard the material: 107.5

(5) City and State Where Program Was Viewed: new york new york

(6) Name of Program or DJ/Personality/Song/Film: wendy williams

Updated? ○ Yes ● No

ANALYSIS SECTION

| | | | |
|---|---|---|---|
| Correspondence Type: | ● Complaint ○ Inquiry | Source Code: | Internet |
| Apparent Carrier(s): | | Re-Serve Carrier(s): | |
| Responding Carrier(s): | | Assigned Subject Code: | Programming Issues |
| | | Program Type: | FM |
| Activity Code: | Direct | Assigned Code Acronym: | PROG |

EB-07-IH-6072

COMPLAINT FOR [redacted]

Complaint Type:Broadcast Account Type: Residential ☐ Congressional Complaint ☐ Di

| IC Number: | 07-WB12944478 | Case Type: | Complaint |
|---|---|---|---|
| Date Received: | 04/13/2007 | Complainant: | [redacted] |
| Date Entered: | 04/13/2007 | Date Assigned: | 04/13/2007 |
| Entered By: | OSCARServer | Date Reassigned: | |
| Assigned To: | [redacted] | Service Date: | [redacted] |
| Date Closed: | 04/25/2007 | Response Date: | |
| Closed By: | [redacted] | Original Analyst: | |
| Close Letter Needed? | ○ Yes ● No | Purged By: | Purged Date: |
| | | Removed By: | Removed Date: |
| Supervisor Check: | ○ Yes ● No | Indecency Referral Code: | [redacted] |

Current Status: [redacted]

*Associated Case:*

Complaint Summary:
Brad Pitt and Angelina Jolie and their orphans and 1 "niglet". Niglet being the obscene word

Apparent Carrier(s):

☐ Yes<<< Check here if you wish to serve both a Wireline and Wireless carrier.

Problem Number:

| | | | |
|---|---|---|---|
| Title: None | First Name: [redacted] | Middle Initial: | Last Name: [redacted] |
| Contact Name: | [redacted] | Best Time to Call: | |
| Contact Number: | Ext. | Consumer's Telephone Number: | Ext. |
| Fax Number: | | TTY Number: | |
| Email Address: | | Internet Address: | |
| PO Box: | | Address: | [redacted] |
| City: | East Orange | State: NJ | Zip: 07017 |

| | |
|---|---|
| On Behalf Of: | |
| Company Name: | |
| Party's Name: | Relationship with the Party: |
| Party's Contact Number: Ext. | PO Box:<br>Address:<br>City:State:Zip: |
| Other Party that can be contacted? | |
| Name: | Relationship: |
| Contact Number: Ext. | Address:<br>City:, State: Zip: |
| **Amount of credit FCC effort generated: | Duplicate Credit Checked: ○ Yes ● No |

Have you paid any of the disputed charges?
Did the company billing for these charges adjust or refund some or all of the disputed charges?

If yes, what was the amount of the adjustment or refund?

a. Name of carrier(s) or company(ies) involved in your complaint: Cyber Communication Services Ltd

b. Telephone number for the carrier(s) or company(ies) involved with your complaint, including area code: Phone: Ext:

c. Which type of service is involved with your complaint:

TCPA Information from 475

1. the telephone number of the individual or company who called or faxed you: Ext:

2. your telephone number(s) on which the call or fax was received: Ext:

3. a description of the telemarketing call, pre-recorded message, or unsolicited fax, including an identification of the company whose products or services were being advertised, and any phone numbers that were included in the call or fax:

4. the "opt-out" number(s) provided in the call(s) or on the fax(es): (List number(s) given in the call(s) or fax(es) for you to contact if you do not want to receive any additional calls or faxes.) Ext:

5. Have you: (a) purchased anything from the company being advertised in the call or fax; (b) made an inquiry or application to that company; or (c) given consent to the company to send you the call or fax? If so, please describe and state when you had such contact with the company.

Broadcast Information from 475B

(1) Date of Program: 04 11/07

(2) Time of Program: Afternoon

(3) Network: WBLS

WBLS

(4) Call Sign, Channel OR Frequency of the station on which you viewed/heard the material: 107.5 FM

(5) City and State Where Program Was Viewed: New York, [illegible]

(6) Name of Program or DJ/Personality/Song/Film: The Wendy Williams Experience

Updated? ○ Yes ● No

ANALYSIS SECTION

| | | | |
|---|---|---|---|
| Correspondence Type: | ● Complaint ○ Inquiry | Source Code: | Internet |
| Apparent Carrier(s): | | Re-Serve Carrier(s): | |
| Responding Carrier(s): | | Assigned Subject Code: | Programming Issues |
| | | Program Type: | FM |
| Activity Code: | Direct | Assigned Code Acronym: | PROG |
| Final Responsible Party: | | Sub-Category: | Profane (PROF) |
| | | Additional Sub-Category: | |
| Copy of Response Sent to Consumer by Carrier?: | ○ Yes ○ No | | |
| Mediation with Carrier/Complainant?: | ○ Yes ○ No | Response Type: | |

Referral Information

Date Referred: 04/25/2007

Consumer Referral Letter | Agency Referr... | Indecent | Rel...

Referred To: Agency Name(s): Company Name(s):

**Exhibit H**

Please Date Stamp and Return To
HOLLAND & KNIGHT LLP

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In re Freedom of Information Act Request of | ) | |
| | ) | |
| Urban Radio I, L.L.C., | ) | FOIA Control No. 2008-238 |
| For Records Concerning Sponsorship | ) | Facility ID No. 28203 |
| Identification Complaints and/or | ) | |
| Proceedings Regarding WBLS(FM) | ) | |
| | ) | |

FILED/ACCEPTED
APR - 2 2008
Federal Communications Commission
Office of the Secretary

TO: Office of General Counsel

**REVIEW OF FREEDOM OF INFORMATION ACTION**

Urban Radio I, L.L.C. ("Urban Radio"), the licensee of WBLS(FM), New York, New York, through its attorneys, and pursuant to Sections 0.461[1] and 1.115[2] of the Commission's rules, hereby submits its application for review of the Commission's denial of a Freedom of Information Act[3] ("FOIA") request due to the Commission's complete failure to respond.

**I. Factual Background**

On February 6, 2008, counsel for Urban Radio e-mailed a FOIA request to the Commission requesting "copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS." Urban Radio's primary purpose for filing the FOIA request was to receive information regarding the Commission's failure to grant WBLS's license renewal application (File No. BRH-20060131AXZ), which was filed on January 31,

[1] 47 C.F.R. § 0.461.
[2] 47 C.F.R. § 1.115.
[3] 5 U.S.C. § 552.

2006, accepted for filing on February 2, 2006, and, more than two years later, still remains "pending."

On February 7, 2008, counsel for Urban Radio received an e-mail from the Commission acknowledging receipt of Urban Radio's FOIA request and providing an anticipated response date by the Commission of March 6, 2008. After the Commission did not respond by the specified date, on March 14, 2008, counsel for Urban Radio received an e-mail from the Commission unilaterally extending the deadline for the Commission response by ten working days, to March 20, 2008. On March 20, 2008, counsel for Urban Radio received a telephone call from William Knowles-Kellett, a Commission staff member, requesting a one-week extension of time with respect to the Commission's response to Urban Radio's FOIA request. On that same day, counsel for Urban Radio sent Mr. Knowles-Kellett an e-mail consenting to the requested one-week extension, and stating the understanding that the Commission was expected to "fully respond to the [ ] FOIA request[] on or before March 27, 2008."[4] To date, the Commission has failed to make any further contact with Urban Radio or its counsel. At present, several days after the twice-extended deadline, the Commission has neither provided documents in response to Urban Radio's FOIA request nor denied the request.

## II. Summary of the Argument

Even though Urban Radio consented to a further extension for the Commission's response to Urban Radio's FOIA request, the Commission has failed to provide a timely, statutorily-mandated response. This failure constitutes a violation of FOIA and provides Urban Radio with the right to bring this application for review. In addition, FOIA requires that the

[4] The same understanding and procedures applied to the concurrently filed FOIA request of Urban Radio under FOIA Control No. 2008-239, under which a separate application for review is being filed today.

Commission provide access to the requested documents unless the Commission can show that the relevant records fall within one of the narrow, explicitly-defined exemptions contained in the statute. Here, the Commission has failed to do either. Therefore, the Commission must now provide an adequate response to Urban Radio's FOIA request by providing access to entire, unredacted copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS.

**III. Applicable Legal Standards**

FOIA is a broad disclosure statute which evidences a "strong public policy in favor of public access to information in the possession of federal agencies."[5] It provides that "[e]ach agency *shall make available* to the public information" through regulatory procedures.[6] Congress provided that nothing in FOIA should be read to "authorize withholding of information or limit the availability of records to the public, except as specifically stated" in the Act.[7] FOIA thus requires agencies to comply with requests to make their records available to the public unless the particular information in those records is exempted by clear statutory language.[8] Moreover, the nine exemptions to disclosure set forth in FOIA are to be construed as narrowly as possible to provide maximum access to agency information.[9] A government agency, therefore, must show that there is no genuine issue as to whether it properly invoked the statutory exemptions authorized under FOIA.[10] In sum, the disclosure requirements of FOIA must be

[5] *Cochran v. U.S.*, 770 F.2d 949, 954 (11th Cir. 1985)(quoting *Brown v. F.B.I.*, 658 F.2d 71, 73 (2d Cir. 1981)).
[6] 5 U.S.C. § 552(a) (emphasis added).
[7] 5 U.S.C. § 552(c); *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).
[8] 5 U.S.C. §§ 552(a) and (b); *Akin, Gump, Strauss, Hauer & Feld v. Dep't of Justice*, 503 F.Supp.2d 373, 378 (D.D.C. 2007); *Oglesby v. Dep't of Army*, 79 F.3d 1172, 1176 (D.C.Cir. 1996).
[9] *Akin*, 503 F.Supp.2d at 378; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C.Cir. 1973).
[10] *Akin*, 503 F.Supp.2d at 378.

construed broadly, the exemptions narrowly,[11] and the burden of proof is upon the party seeking to invoke an exemption from mandatory disclosure.[12]

Under FOIA, a federal agency must determine within twenty days (excepting weekends and holidays) after the receipt of a FOIA request whether to comply with such request, and immediately notify the person making the request of its determination and the reasons therefor, as well as the requester's right to appeal to the head of the agency any adverse determination.[13] An agency may, however, under specified "unusual circumstances," extend the prescribed twenty-day time limit by providing written notice which sets forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched.[14] Such a notice may not specify a date that would result in an extension of time for more than ten working days.[15] In addition, an agency may ask the person making the request to agree to an alternative time frame for processing the request.[16]

## IV. The Commission's Failure to Provide a Timely Response Violated FOIA, Giving Urban Radio the Right to File an Application for Review

As noted, the Commission extended the original deadline for its response to Urban Radio's FOIA request by ten days. On the last day of this extended period – March 20, 2008 – the Commission requested an additional extension of one week, to March 27, 2008, to which Urban Radio consented. To date, Urban Radio has not received any response to its FOIA request, even though the deadline for the Commission's response, which was extended twice, has passed. The Commission's failure to provide a response within the applicable time limit

[11] *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)(quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1142 (D.C.Cir. 1975)).
[12] *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80 (1973).
[13] 5 U.S.C. § 552(a)(6)(A)(i).
[14] 5 U.S.C. § 552(a)(6)(B)(i).
[15] *Id.*
[16] 5 U.S.C. § 552(a)(6)(B)(ii).

provisions constituted an improper withholding of the requested records,[17] and thereby violated FOIA.[18] As a result, Urban Radio had a statutory right to file this administrative appeal.[19]

Although a federal agency need not actually fulfill a FOIA request within the applicable period of time, it is required to notify the requester of its decision whether and how it will comply, its reasons for that decision, and the requester's right to appeal any adverse determination to the agency head.[20] Here, the correspondence received from the Commission included only its acknowledgement of receipt of the FOIA request, an e-mail opting for a ten-day extension, and a telephone call requesting an additional one-week extension. An appropriate FOIA response, however, requires much more of the Commission. It plainly requires a "determination" of whether the agency will "comply" with a request, and a prompt notification of that determination within the applicable time limit provisions.[21] The mere acknowledgement of a request is not the equivalent of a "determination,"[22] and the failure to inform an individual of the right to appeal constitutes a failure to reach a determination within the statutory time limitations.[23]

---

[17] *See Ore. Natural Desert Ass'n v. Gutierrez*, 409 F.Supp.2d 1237, 1248 (D.Ore. 2006) (finding that the agency's reliance on its mootness argument and failure to establish the exceptional circumstances with due diligence exception constituted an untimely determination, resulting in an improper withholding under FOIA).

[18] *See id.* ("... an untimely response is a violation of FOIA ...").

[19] *See Jenks v. Marshals Serv.*, 514 F.Supp. 1383, 1387 (S.D.Ohio 1981) (concluding that the agency's failure to respond to the FOIA request within the applicable time limit provisions gave the plaintiff the option to administratively appeal). Under Section 0.461(i)(2) of the Commission's rules, that appeal is to be in the form of an application for review.

[20] *See* 5 U.S.C. § 552(a)(6)(A)(i); *see, also, Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995).

[21] 5 U.S.C. § 552(a)(6)(A)(i); *see Peck v. C.I.A.*, 787 F.Supp. 63, 65 (S.D.N.Y. 1992).

[22] *Peck*, 787 F.Supp. at 65 (citing *Spannaus v. Dep't of Justice*, 824 F.2d 52, 56, n.9 (D.C.Cir. 1987)).

[23] *Hudgins v. I.R.S.*, 620 F.Supp. 19, 21 (D.D.C. 1985).

## V. The Commission Must Provide All Records Requested by Urban Radio

As noted, FOIA requires agencies to comply with requests to make their records available to the public unless the particular information in those records is exempted by clear statutory language.[24] Here, the Commission has made no attempt to justify the withholding of any of the records requested by Urban Radio in its FOIA request. Moreover, the statutorily-imposed deadlines, as well as the extended deadline granted by Urban Radio, have passed. Consequently, the Commission must promptly provide any and all documents in its possession that are responsive to Urban Radio's FOIA request.

In the alternative, the Commission should declare that it possesses no information concerning sponsorship identification complaints and/or proceedings regarding WBLS.

## V. Conclusion

Based upon the foregoing, Urban Radio respectfully requests that the Commission provide entire, unredacted copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS or state that no such information exists.

---

[24] 5 U.S.C. §§ 552(a) and (b); *Akin*, 503 F.Supp.2d at 378; *Oglesby*, 79 F.3d at 1176.

Respectfully submitted,

URBAN RADIO I, L.L.C.

By: ______________________

Charles R. Naftalin
Leighton T. Brown II
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Phone: (202) 457-7040
Fax: (202) 955-5564
Email: charles.naftalin@hklaw.com

April 2, 2008

Its Attorneys

# Exhibit I

**Brown, Leighton T (WAS - X77161)**

**From:** William Knowles-Kellett [William.Knowles-Kellett@fcc.gov]
**Sent:** Wednesday, April 09, 2008 12:03 PM
**To:** Brown, Leighton T (WAS - X77161)
**Cc:** Gary Schonman; Cerita Diggs; Patricia Quartey; Shoko Hair; Debbie Byrd
**Subject:** Freedom of Information Act Request Control No. 2008-238
**Follow Up Flag:** Follow up
**Flag Status:** Completed
**Attachments:** img-409105812.pdf

Mr. Brown--

Please find attached a letter responding to your Freedom of Information Act Request Control No. 2008-238.

Sincerely,
William Knowles-Kellett
*Attorney*
Investigations and Hearings Division, Enforcement Bureau
Federal Communications Commission
(717) 338-2505
Fax (717) 338-2574

<<img-409105812.pdf>>



**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau, Investigations and Hearings Division
445 12th Street, S.W., Room 4-C330
Washington, D.C. 20554

April 9, 2008

*Via email to leighton.brown@hklaw.com*

Leighton T. Brown, Esq.
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Re: Freedom of Information Act Request
FOIA Control No. 2008-238

Dear Mr. Brown:

This letter responds to your recent request, submitted under the Freedom of Information Act ("FOIA") in which you request "copies of any and all records concerning sponsorship identification complaints and/or proceedings" regarding WBLS(FM) New York, New York.

We have not located any copies of complaints and have no pending proceedings against Station WBLS(FM). We have located 13 pages of documents relating to sponsorship identification that reference Station WBLS(FM). We find that these pages are exempt from disclosure under Exemption 7 of the FOIA because we find that the release of these documents is likely to interfere with pending and/or prospective enforcement proceedings. *See* 5 U.S.C. § 552(b)(7).

If you believe this to be a denial of your request, you may file an application for review with the FCC's Office of General Counsel within thirty (30) days of the date of this letter. 47 C.F.R. §§ 0.461(j) and 1.115. If you have further questions, please feel free to call William Knowles-Kellett at (717) 338-2505.

Sincerely,

Wm Knowles-Kellett for

Gary Schonman
Acting Deputy Chief
Investigations and Hearings Division
Enforcement Bureau

# Exhibit J

Please Date Stamp and Return To
HOLLAND & KNIGHT LLP

FILED/ACCEPTED
APR 16 2008
Federal Communications Commission
Office of the Secretary

Before the
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In re Freedom of Information Act Request of | ) | |
| | ) | |
| Urban Radio I, L.L.C., | ) | FOIA Control No. 2008-238 |
| *For Records Concerning Sponsorship* | ) | *Facility ID No. 28203* |
| Identification Complaints and/or | ) | |
| Proceedings Regarding WBLS(FM) | ) | |

TO: Office of General Counsel

**SUPPLEMENT TO REVIEW OF FREEDOM OF INFORMATION ACTION**

**URBAN RADIO I, L.L.C.**

Charles R. Naftalin
Leighton T. Brown II
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
*Phone:* (202) 457-7040
Fax: (202) 955-5564
Email: charles.naftalin@hklaw.com

April 16, 2008

*Its Attorneys*

## SUMMARY

This supplement to the application for review filed by Urban Radio I, L.L.C. ("Urban Radio"), licensee of WBLS(FM), New York, New York addresses the Commission's statutorily untimely response to a Freedom of Information Act ("FOIA") request submitted by Urban Radio. On April 2, 2008, Urban Radio exercised its statutory right to file an application for review after the Commission failed to respond to Urban Radio's request by the FOIA-mandated deadline. On April 9, 2008, nearly two weeks after failing to respond by the twice-extended deadline, the Commission finally provided a response to Urban Radio's FOIA request.

This "response," however, consisted of nothing more than a one-page letter which, although acknowledging that 13 pages of responsive documents had been found and stating that there are "no pending proceedings against Station WBLS(FM)," refused to disclose any of the documents or any part of them. The Commission's sole, and unexplained, "justification" for withholding these documents is the conclusory statement that their disclosure would "interfere with pending and/or prospective enforcement proceedings." This unjustified denial is an overt violation of FOIA.

A federal agency may not avoid FOIA's broad disclosure requirements by general, conclusory statements that withheld information fits within one of FOIA's exemptions. The Commission's response thus violated FOIA because it failed to offer an explanation sufficient enough to invoke FOIA Exemption 7(A) (or any other FOIA exemption). Under Exemption 7(A), the Commission had to demonstrate that enforcement proceedings were underway or imminent. Obviously, it offered no such justification, especially because it admitted that there are no proceedings at all. And, having failed that threshold requirement, the Commission

separately violated FOIA's segregability requirement by its unexplained refusal to disclose any portion of these documents.

# TABLE OF CONTENTS

I. FACTUAL BACKGROUND .....2

II. SUMMARY OF THE ARGUMENT .....3

III. APPLICABLE LEGAL STANDARDS .....4

IV. THE COMMISSION FAILED TO MEET ITS BURDEN UNDER FOIA EXEMPTION 7(A) .....6

A. THE COMMISSION FAILED TO DEMONSTRATE THAT AN ENFORCEMENT PROCEEDING IS PENDING OR PROSPECTIVE .....6

B. THE COMMISSION FAILED TO SHOW THAT A SPECIFIC HARM TO AN ENFORCEMENT PROCEEDING WOULD RESULT FROM DISCLOSURE OF THE DOCUMENTS .....9

V. THE COMMISSION FAILED TO JUSTIFY WITHHOLDING ENTIRE DOCUMENTS .....11

VI. CONCLUSION .....14

**Before the**
**FEDERAL COMMUNICATIONS COMMISSION**
**Washington, D.C. 20554**

| | | |
|---|---|---|
| In re Freedom of Information Act Request of | ) | |
| | ) | |
| Urban Radio I, L.L.C., | ) | FOIA Control No. 2008-238 |
| For Records Concerning Sponsorship | ) | Facility ID No. 28203 |
| Identification Complaints and/or | ) | |
| Proceedings Regarding WBLS(FM) | ) | |

TO: Office of General Counsel

**SUPPLEMENT TO REVIEW OF FREEDOM OF INFORMATION ACTION**

Urban Radio I, L.L.C. ("Urban Radio"), the licensee of WBLS(FM), New York, New York, through its attorneys, and pursuant to Sections 0.461[1] and 1.115[2] of the Commission's rules, hereby submits a supplement to its April 2, 2008 application for review of the Commission's denial of a Freedom of Information Act[3] ("FOIA") request. Urban Radio submits this supplement because the Commission, although statutorily untimely, has provided a "response" to Urban Radio's FOIA request since the filing of the application for review. The Commission's response, however, did not provide any of the requested information. Instead, without a single word of explanation, the Commission relied on FOIA Exemption 7(A) for its withholding of the documents that, the Commission admits, are in its possession and responsive to Urban Radio's FOIA request.

[1] 47 C.F.R. § 0.461.
[2] 47 C.F.R. § 1.115.
[3] 5 U.S.C. § 552.

## I. Factual Background

On February 6, 2008, counsel for Urban Radio e-mailed a FOIA request to the Commission requesting "copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS." Urban Radio's primary purpose for filing the FOIA request was to receive information regarding the Commission's failure to grant WBLS's license renewal application (File No. BRH-20060131AXZ), which was filed on January 31, 2006, accepted for filing on February 2, 2006, and, more than two years later, still remains "*pending*."

On February 7, 2008, counsel for Urban Radio received an e-mail from the Commission acknowledging receipt of Urban Radio's FOIA request and providing an anticipated response date by the Commission of March 6, 2008. After the Commission did not respond by the specified date, on March 14, 2008, counsel for Urban Radio received an e-mail from the Commission unilaterally extending the deadline for the Commission response by ten working days, to March 20, 2008. On March 20, 2008, counsel for Urban Radio received a telephone call from William Knowles-Kellett, a Commission staff member, requesting a one-week extension of time for the Commission's response to Urban Radio's FOIA request. On that same day, counsel for Urban Radio sent Mr. Knowles-Kellett an e-mail consenting to the requested one-week extension, and stating the understanding that the Commission was expected to "fully respond to the [ ] FOIA request[] on or before March 27, 2008."[4]

As of April 2, 2008, the Commission had failed to make any further contact with Urban Radio or its counsel. The Commission had neither provided documents in response to Urban Radio's FOIA request nor denied the request. Therefore, on April 2, 2008, Urban Radio

[4] The same understanding and procedures applied to a separate FOIA request of Urban Radio, FOIA Control No. 2008-239, for which a separate application for review was filed on April 2, 2008.

exercised its statutory rights by filing an application for review of the Commission's denial, due to its complete failure to respond, of the FOIA request.

On April 9, 2008, counsel for Urban Radio received an e-mail from Mr. Knowles-Kellett which contained, as an attached file, the Commission's long overdue response to Urban Radio's FOIA request.[5] The FOIA Response consisted of nothing more than a letter from Gary Schonman, Acting Deputy Chief, Investigations and Hearings Division, Enforcement Bureau. Mr. Schonman wrote that the Commission had "not located any copies of complaints and [has] no pending proceedings against Station WBLS(FM)," but had "located 13 pages of documents *relating to sponsorship identification that reference Station WBLS(FM).*" *According to* Mr. Schonman, however, the Commission would not disclose those documents because it found "that these pages are exempt from disclosure under Exemption 7 of the FOIA because [ ] the release of these documents is likely to interfere with pending and/or prospective enforcement proceedings."

## II. Summary of the Argument

The Commission's exclusive basis for withholding, in their entirety, the thirteen pages of documents responsive to Urban Radio's FOIA request, and admittedly in the Commission's possession, is FOIA Exemption 7(A). To rely on Exemption 7(A) to justify withholding documents, FOIA requires a government agency to make specified, particularized showings. Here, the Commission's FOIA Response simply referred to FOIA Exemption 7(A) and "found" an exemption without explanation. The Commission's initial failure to respond by the deadline, as well as its untimely response which withholds all responsive documents with no attempt at actual justification, both fail to comply with FOIA's statutory requirements. Therefore, the Commission must now provide the documents in response to Urban Radio's FOIA request.

---

[5] Exhibit A is a copy of that attached file (the "FOIA Response").

## III. Applicable Legal Standards

The Supreme Court has recognized that FOIA sets forth a policy of broad disclosure of government documents in order "to ensure an informed citizenry, vital to the functioning of a democratic society."[6] FOIA's "basic policy" is in favor of full disclosure.[7] Therefore, a government agency must fully disclose all documents requested pursuant to FOIA unless the information is exempted under clearly delineated statutory language.[8] If the requested material does not fit within one of the statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the public.[9]

The specific exemptions under FOIA are extremely narrow.[10] Moreover, because FOIA creates a presumption in favor of disclosure, the government agency has the burden of demonstrating that a statutory exemption is applicable.[11] This burden cannot be satisfied by conclusory and generalized allegations of exemptions.[12] Consequently, "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."[13]

---

[6] *FBI v. Abramson*, 456 U.S. 615, 621 (1982)(quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)).
[7] *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976).
[8] *Pratt v. Webster*, 673 F.2d 408, 413 (D.C.Cir. 1982)(quoting S.Rep.No.813, 89th Cong., 1sr Sess. 3 (1965)).
[9] *Robbins Tire*, 437 U.S. at 221.
[10] *Black v. Sheraton Corp. of Amer.*, 371 F.Supp. 97, 102 (D.D.C. 1974)(citing *Bristol-Myers Co. v. FTC*, 424 F.2d 935, 939 (D.C.Cir. 1970)).
[11] *See Ferri v. Bell*, 645 F.2d 1213, 1221 (3d Cir.1981), *modified on other grounds* 671 F.2d 769 (3d Cir.1982); *Committee on Masonic Homes of the R.W. Grand Lodge v. NLRB*, 556 F.2d 214, 218 (3d Cir.1977).
[12] *See Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C.Cir. 1977); *Church of Scientology of Cal. v. Dep't of the Army*, 611 F.2d 738, 742 (9th Cir. 1980).
[13] *Mead Data*, 566 F.2d at 251.

Here, with no actual explanation (about ten words), the Commission merely recited FOIA Exemption 7(A) to withhold the documents requested by Urban Radio. Exemption 7 applies generally to "records or information compiled for law enforcement purposes . . . ."[14] However, these documents are exempt "only to the extent that production of the information might be expected to produce one of six specified harms."[15] When Congress amended Exemption 7 to include these six subparts, it did so "to eliminate 'blanket exemptions' for Government records simply because they were found in investigatory files compiled for law enforcement purposes."[16] In other words, "[t]he location of a nonexempt document in an investigatory file does not necessarily make that document exempt from FOIA's disclosure requirements."[17] Instead, the government must "specify some harm in order to claim the exemption."[18]

In narrowing the scope of Exemption 7, "Congress placed a significant burden on the government."[19] In addition, because the Commission is a mixed-function agency, its reliance upon Exemption 7 must survive a "more exacting scrutiny."[20] In order to satisfy this heavy

---

[14] 5 U.S.C. § 552(b)(7).
[15] *Keys v. Dep't of Justice*, 830 F.2d 337, 340 (D.C.Cir. 1987)(citing *FBI v. Abramson*, 456 U.S. 615).
[16] *Robbins Tire*, 437 U.S. at 236.
[17] *Abramson v. FBI*, 658 F.2d 806, 811-12 (D.C.Cir. 1980); *see also Curran v. Dep't of Justice*, 813 F.2d 473, 475 (1st Cir. 1987)("Put another way, merely because a piece of paper has wended its way into an investigative dossier created in anticipation of enforcement action, an agency . . . cannot automatically disdain to disclose it."); *Robbins Tire*, 437 U.S. at 230 ("[T]he thrust of congressional concern in its amendment of Exemption 7 was to make clear that the Exemption did not endlessly protect material simply because it was in an investigatory file.").
[18] *Title Guarantee Co. v. NLRB*, 407 F.Supp. 498, 504 (S.D.N.Y. 1975)(quoting 120 Cong.Rec. H10868 (Remarks of Congressman Reed of New York)(daily ed. Nov. 20, 1974)).
[19] *Cohen v. E.P.A.*, 575 F.Supp. 425, 427 (D.D.C. 1983).
[20] *See Pratt*, 673 F.2d at 416 ("This judicial development, most often taking the form of more exacting scrutiny of Exemption 7 claims by agencies whose principal function is not law enforcement, is well-grounded in congressional purpose, commonsense, and notions of judicial economy."); *see also Tax Analysts v. I.R.S.*, 294 F.3d 71, 77 (D.C.Cir. 2002)("[A] court must scrutinize with some skepticism the particular purpose claimed for disputed documents redacted under FOIA Exemption 7.").

burden, the government must prove two elements.[21] First, the agency must show that a law enforcement proceeding is pending or prospective.[22] Second, the agency must show that one of the six harms specified in Exemption 7 is likely to result if the requested record or information is disclosed.[23]

## IV. The Commission Failed to Meet Its Burden Under FOIA Exemption 7(A)

Although the Commission admits that it located thirteen pages of documents responsive to Urban Radio's FOIA request, it refused to disclose any portion of these documents. The Commission attempts to justify this withholding on the grounds that these pages are exempt from disclosure under Exemption 7(A) because "the release of these documents is likely to interfere with pending and/or prospective enforcement proceedings."

As with any claim based on Exemption 7, an agency relying on Exemption 7(A) to justify withholding information must meet a two-pronged standard. As a threshold matter, the government must establish that a law enforcement proceeding is pending or prospective.[24] Second, the agency must show that the release of the information reasonably could be expected to interfere with this particular enforcement proceeding.[25]

### A. The Commission Failed to Demonstrate that an Enforcement Proceeding is Pending or Prospective

Federal agencies must meet the threshold requirements of Exemption 7 before they may withhold requested documents on the basis of any of its subparts.[26] Therefore, the Commission,

---

[21] *See Environmental Protection Services, Inc. v. E.P.A.*, 364 F.Supp.2d 575, 587-88 (N.D.W.V. 2005); *Keys*, 830 F.2d at 340 (citing *FBI v. Abramson*, 456 U.S. 615).
[22] *Manna v. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir.1995).
[23] *Manna*, 51 F.3d at 1164; *see also North v. Walsh*, 881 F.2d 1088, 1098 (D.C.Cir.1989).
[24] *Robbins Tire*, 437 U.S. at 224; *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 789 F.2d 64, 65-67 (D.C.Cir.1986); *Campbell v. Dep't of Health and Human Serv.*, 682 F.2d 256, 263 (D.C.Cir.1982); *Voinche v. F.B.I.*, 46 F.Supp.2d 26, 31 (D.D.C. 1999).
[25] *Voinche*, 46 F.Supp.2d at 31; *Kay v. FCC*, 867 F.Supp. 11, 17 (D.D.C. 1994)("*Kay I*").
[26] *Pratt*, 673 F.2d at 416.

before it could assert an exemption based on interference, had to establish that a law enforcement proceeding relating to the requested information is pending or prospective. The Commission failed to even make this claim.[27] In fact, the Commission's FOIA Response explicitly states that it has "no pending proceedings against Station WBLS(FM)."

Moreover, even if the Commission had explicitly claimed that some enforcement proceeding against WBLS was prospective, such a generalized assertion would not have satisfied the Commission's burden under Exemption 7(A)'s threshold requirement. An agency cannot, consistent with the broad disclosure mandate of FOIA, protect all of its files with a suggestion that enforcement proceedings may be launched at some unspecified future date.[28] Rather, Exemption 7(A) only justifies the withholding of information if the material withheld relates to a specific, concrete prospective law enforcement proceeding which is imminent.[29] Indeed, Exemption 7(A) does not include the terms "pending or prospective," so immediacy necessarily is required. Consequently, an agency may not withhold responsive documents merely because

---

[27] The closest the Commission came to making such a claim was its unexplained conclusion that "the release of these documents is likely to interfere with pending and/or prospective enforcement proceedings."

[28] *Bristol-Myers*, 424 F.2d at 939; *see also Assoc. Dry Goods Corp. v. NLRB*, 455 F.Supp. 802, 813 (S.D.N.Y. 1978)("[T]he use of the plural, 'proceedingS,' does not lead to the conclusion that Congress intended that the term include All future proceedings.").

[29] *Kay v. FCC*, 976 F.Supp. 23, 38 (D.D.C. 1997)("*Kay II*")("An agency may invoke Exemption 7(A) when either the government's case in court could be harmed or the investigation for an imminent proceeding may be harmed.") (emphasis added); *Carson v. Dep't of Justice*, 631 F.2d 1008, 1018 (D.C.Cir. 1980) (citing remarks of Sen. Hart, quoted in *Robbins Tire*, 437 U.S. at 232); *see also Assoc. Dry Goods*, 455 F.Supp. at 813 ("[T]he proper focus of Exemption 7(A) is on the effect of disclosure on specific, concrete proceedings."); *Donovan v. FBI*, 579 F.Supp. 1111, 1123 (S.D.N.Y. 1984)(finding that, although an eventual trial appeared to be contemplated, this prospect was not concrete enough to justify withholding the requested documents under Exemption 7(A). "Given the continuous delays in the trial of murders which took place over two and a half years ago, and given the ongoing violence and political turbulence in El Salvador, there is certainly some questions as to when, if ever, the trial will take place.").

they are related to an enforcement proceeding or might be related to some hypothetical future proceeding.[30] There must be a concrete, identifiable enforcement proceeding on hand.

Of course, the Commission failed to bear its burden under this prong of the FOIA analysis because it admitted that it has "no proceedings against Station WBLS(FM)." Moreover, the Commission allowed nearly three years to pass without initiating proceedings. Urban Radio knows this because the FCC staff advised it, through counsel, that any basis for the Commission to believe that WBLS may have violated its sponsorship identification obligations was based on documents developed by the Office of the Attorney General for the State of New York concerning practices of New York City radio stations.

Attorney General Elliot Spitzer announced settlements in that sponsorship identification proceeding on July 25, 2005.[31] The same day, Commissioner Adelstein publicly called for an investigation of payola practices based upon the information developed by the Attorney General.[32] Then on August 8, 2005, Chairman Martin stated that he had "directed the Enforcement Bureau to review the settlement agreement reached by Sony BMG and [Spitzer] and investigate any incidents in which the agreement discloses evidence of payola rule violations."[33]

In February 2006, Commissioner Adelstein stated that the FCC was currently pouring over stacks of evidence received from Spitzer regarding potential payola violations.[34] In April 2006, Attorney General Spitzer stated: "Unfortunately the FCC, contrary to good public policy,

---

[30] *Kay II*, 976 F.Supp. at 38 (citing *Campbell*, 682 F.2d at 259).
[31] Exhibit B hereto includes copies of the Commission's News Releases relied upon here.
[32] See Exhibit B.
[33] See Exhibit B.
[34] Free Press, *Report: FCC Conduction Huge Payola Probe*, http://www.freepress.net/nes/13912 (Feb. 10, 2006) (last accessed on April 15, 2008).

has not pursued an *investigation of the underlying facts*."[35] *Consequently, it is abundantly clear* that the FCC not only has no proceedings against Urban Radio, but that it has failed to initiate such proceedings for most of three years. Therefore, the Commission cannot claim that it has met Exemption 7(A)'s threshold requirement because there are no pending proceedings against WBLS despite the fact that close to three years have passed during which the Commission could have initiated such proceedings if credible evidence warranted them.

**B. The Commission Failed to Show that a Specific Harm to an Enforcement Proceeding Would Result From Disclosure of the Documents**

The Commission's failure to establish at the threshold that these records implicate a pending or prospective law enforcement proceeding is sufficient grounds alone to overturn the decision not to release the records requested by Urban Radio. A separate and independent ground for ordering the records is the Commission's failure to show that any specific harm would result from the release, as is also its burden under Exemption 7(A) for withholding the requested documents.

In order for a document to fall within Exemption 7(A), "the government must show that specific harm might result to its case from disclosure."[36] General contentions as to why the disclosure of records could "interfere with enforcement proceedings" are insufficient.[37] Instead, "the government must establish, by more than conclusory statement, how particular kinds of records requested would interfere with a pending enforcement proceeding."[38] Specifically, disclosure of the requested information reasonably must be expected to interfere in a "palpable,

[35] Charles Duhigg, *Los Angeles Times*, *FCC Launches Payola Probes of 4 Radio Giants* (Apr. 20, 2006).
[36] *Deering Milliken, Inc. v. Irving*, 548 F.2d 1131, 1135 (4th Cir. 1977).
[37] *Title Guarantee*, 407 F.Supp. at 504.
[38] *Butler v. Dep't of the Air Force*, 888 F.Supp. 174, 183 (D. D.C. 1995) (citing *Campbell*, 682 F.2d at 263); *see also Cohen*, 575 F.Supp. at 428 (finding that the government had not adequately carried its burden because it had provided no more than conclusory statements about the possible effects of disclosure) (emphasis added).

particular way" with a particular enforcement proceeding.[39] This requires, first, that the agency establish a direct relationship between the requested records and the particular enforcement proceeding.[40] Then, the agency must demonstrate that disclosure would "disrupt, impede or otherwise harm the enforcement proceeding or the investigation."[41] A proper resolution of this question requires weighing "the strong presumption in favor of disclosure under FOIA against the likelihood that disclosure at this time would harm the government's ability to properly enforce the law."[42]

To meet its burden under Exemption 7(A) of demonstrating interference, an agency need not establish on a document-by-document basis the interference that would result from the disclosure of each document.[43] However, an agency must, upon independent document-by-document review, group documents into categories that are sufficiently distinct to allow the requesting party or a reviewing court to "trace a rational link between the nature of the document and the alleged likely interference."[44]

When a government agency proceeds under this approach, it must satisfy a tripartite standard.[45] First and most importantly, the agency must define the categories functionally.[46] In order for a category to be "functional," it must allow the requesting party to link the nature of the document with the alleged likely interference.[47] Second, the agency must conduct a document-

---

[39] *See North v. Walsh*, 881 F.2d 1088, 1100 (D.C. Cir. 1989).
[40] *Kay II*, 976 F.Supp. at 38 (citing *Campbell*, 682 F.2d at 259).
[41] *Id.* (quoting *North*, 881 F.2d at 1097).
[42] *Concrete Constr. Co. v. Dep't of Labor*, 748 F.Supp. 562, 568 (S.D.Ohio 1990); *see also Robbins Tire*, 437 U.S. at 236.
[43] *See Robbins Tire*, 437 U.S. at 232.
[44] *See Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C.Cir.1986); *Robbins Tire*, 437 U.S. at 236 (1978); *Campbell*, 682 F.2d at 265.
[45] *See Bevis*, 801 F.2d at 1389-90.
[46] *Id.*
[47] *Id.*

by-document review in order to assign each document to a proper category.[48] Absent such individual scrutiny, the categories would be no more than smaller versions of the "blanket exemptions" Congress explicitly disapproved of when it amended FOIA Exemption 7.[49] Finally, the agency must explain, with sufficient specificity, how the release of material in each category would interfere with a particular enforcement proceeding.[50]

Here, the Commission merely stated that the withheld documents relate to sponsorship identification, reference WBLS, and would likely interfere with enforcement proceedings. The Commission, therefore, has not met its burden of conducting a document-by-document review of the withheld documents, defining functional categories of these documents, and explaining how the release of each category of documents could interfere with a particular law enforcement proceeding. As a result, the Commission cannot justifiably rely upon Exemption 7(A) because its response was patently inadequate to permit Urban Radio to determine whether Exemption 7(A) was properly invoked.[51]

## V. <u>The Commission Failed to Justify Withholding Entire Documents</u>

Even if FOIA Exemption 7(A) justified the Commission's withholding of portions of the responsive documents, the Commission was required to produce any information contained in those documents which does not fall squarely within that exemption. FOIA mandates that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record

---

[48] *Id.*
[49] *Crooker*, 789 F.2d at 66 (quoting *Robbins Tire,* 437 U.S. at 236).
[50] *See Bevis,* 801 F.2d at 1389-1390; *Campbell,* 682 F.2d at 265 (holding that, in order to prevail, the Government "must show, by more than conclusory statement, how the particular kinds of investigatory records requested would interfere with a pending enforcement proceeding.").
[51] *See Putnam v. Dep't of Justice*, 873 F.Supp. 705, 713-14 (D.D.C. 1995); *Voinche*, 46 F.Supp.2d at 31 (Court refused to uphold the FBI's invocation of Exemption 7(A) because the FBI had not described the application of the exemption to the documents with sufficient specificity. "The FBI makes only conclusory statements that the release of the file as a whole would result in the described adverse effects on the investigation.").

after deletion of the portions which are exempt under this subsection."[52] This segregability requirement applies to all documents and all FOIA exemptions.[53]

In order to withhold a document in its entirety, a federal agency must "demonstrate that it cannot segregate nonexempt responsive material from the exempt materials."[54] In other words, it is the agency's burden to prove that the withheld portions are not segregable from the nonexempt material.[55] Due to FOIA's focus on information, not documents, an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.[56] Rather, the agency must demonstrate that all reasonably segregable, nonexempt information was released.[57] Nonexempt information is incapable of being segregated only if it is "inextricably intertwined with exempt portions."[58] With respect to Exemption 7(A), therefore, only those portions of the record that actually interfere with the particular proceedings may be withheld.[59]

The question of segregability is completely dependent on the actual content of the documents, which makes the requesting party incapable of countering an agency's unsupported claim that there is no non-exempt and reasonably segregable material within a withheld document.[60] Therefore, to prevent FOIA's segregability provision from being "nothing more than a precatory precept," agencies must provide the reasons behind their conclusions so that

---

[52] 5 U.S.C. § 552(b).
[53] *Gutman v. Dep't of Justice*, 238 F.Supp.2d 284, 295 (D.D.C. 2003)(citing *Center for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C.Cir. 1984)).
[54] *Voinche*, 46 F.Supp.2d at 31 (citing *Summers v. Dep't of Justice*, 140 F.3d 1077, 1081 (D.C.Cir. 1998); *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949(D.C.Cir. 1998)).
[55] *Davin v. Dep't of Justice*, 60 F.3d 1043, 1052 (3d Cir. 1995).
[56] *Mead Data*, 566 F.2d at 260.
[57] *Abdelfattah v. Dep't of Homeland Security*, 488 F.3d 178, 186 (citing *Davin*, 60 F.3d at 1052).
[58] *Mead Data*, 566 F.2d at 260.
[59] *J.P. Stevens*, 710 F.2d at 141.
[60] *Mead Data*, 566 F.2d at 260.

they may be challenged by FOIA plaintiffs and reviewed by the courts.[61] The government's burden "cannot be shifted by sweeping, generalized claims of exemption."[62] Moreover, this burden is a heavy one because, in determining segregability, courts construe the exemptions narrowly, with the emphasis on disclosure.[63]

As a result, in order to establish that all reasonably segregable information has been released, the agency *must provide a detailed justification for the withholdings*,[64] *which requires* far more than an unsupported conclusion to justify withholding the whole document.[65] Although an agency need not describe the information with such detail that the information is effectively disclosed, it must show with "reasonable specificity" why the document cannot be segregated.[66] In other words, to demonstrate that it has disclosed all reasonably segregable material, "the withholding agency must supply a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular *part of a withheld document to which they apply*."[67] *Conclusory statements which do not* provide a specific basis for segregability are inadequate.[68] Moreover, in addition to a statement

---

[61] *Mead Data*, 566 F.2d at 261; *see also Davin*, 60 F.3d at 1052 ("Without some further elaboration of the document's contents, [plaintiff] is unable to dispute the [agency's] assertion that more information is not segregable.").
[62] *Mead Data*, 566 F.2d at 260.
[63] *Davin*, 60 F.3d at 1052.
[64] *Brunetti v. FBI*, 357 F.Supp.2d 97, 111 (D.D.C. 2004)(citing *Mead Data*, 566 F.2d at 261).
[65] *Church of Scientology Int'l v. Dep't of Justice*, 30 F.3d 224, 232, n. 11 (1st Cir.1994); *Davin*, 60 F.3d 1043 at 1052 (finding the agency's statements regarding segregability, which merely contained assertions that documents were withheld because they contain the type of information generally protected by a particular exemption, to be "wholly conclusory," and thus inadequate).
[66] *Brunetti*, 357 F.Supp.2d at 111.
[67] *Gutman*, 238 F.Supp.2d at 295 (quoting *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir. 1987)).
[68] *Gutman*, 238 F.Supp.2d at 295.

of its reasons, an agency also should describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.[69]

The Commission failed to make any of these required showings. In fact, its FOIA response never even addressed the issue of segregability. The Commission thus failed to meet its burden under FOIA's segregability requirement. As a result, the Commission must disclose any and all *portions of the withheld documents which do not clearly fall within a narrowly defined* FOIA exemption.

## VI. Conclusion

Based upon the foregoing, Urban Radio respectfully requests that the Commission provide entire, unredacted copies of any and all records concerning sponsorship identification complaints and/or proceedings regarding WBLS.

Respectfully submitted,

URBAN RADIO I, L.L.C.

By: ______________________

Charles R. Naftalin
Leighton T. Brown II
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W., Suite 100
Washington, DC 20006-6801
Phone: (202) 457-7040
Fax: (202) 955-5564
Email: charles.naftalin@hklaw.com

April 16, 2008

*Its Attorneys*

---

[69] *Mead Data*, 566 F.2d at 261; *see also Abdelfattah*, 488 F.3d at 186-87 (holding that the agency failed to meet its burden because there was "no description of the agency's process for making such a determination, no factual recitation of why certain materials are not reasonably segregable, and no indication of what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document.").

**EXHIBIT A**



**FEDERAL COMMUNICATIONS COMMISSION**
Enforcement Bureau, Investigations and Hearings Division
445 12th Street, S.W., Room 4-C330
Washington, D.C. 20554

April 9, 2008

*Via email to leighton.brown@hklaw.com*

Leighton T. Brown, Esq.
Holland & Knight LLP
2099 Pennsylvania Avenue, N.W.
Suite 100
Washington, D.C. 20006-6801

Re: Freedom of Information Act Request
FOIA Control No. 2008-238

Dear Mr. Brown:

This letter responds to your recent request, submitted under the Freedom of Information Act ("FOIA") in which you request "copies of any and all records concerning sponsorship identification complaints and/or proceedings" regarding WBLS(FM) New York, New York.

We have not located any copies of complaints and have no pending proceedings against Station WBLS(FM). We have located 13 pages of documents relating to sponsorship identification that reference Station WBLS(FM). We find that these pages are exempt from disclosure under Exemption 7 of the FOIA because we find that the release of these documents is likely to interfere with pending and/or prospective enforcement proceedings. *See* 5 U.S.C. § 552(b)(7).

If you believe this to be a denial of your request, you may file an application for review with the FCC's Office of General Counsel within thirty (30) days of the date of this letter. 47 C.F.R. §§ 0.461(j) and 1.115. If you have further questions, please feel free to call William Knowles-Kellett at (717) 338-2505.

Sincerely,

[signature] for

Gary Schonman
Acting Deputy Chief
Investigations and Hearings Division
Enforcement Bureau

**EXHIBIT B**



**Federal Communications Commission**
**445 12th Street, S.W.**
**Washington, D. C. 20554**

News Media Information 202 / 418-0500
Internet: http://www.fcc.gov
TTY: 1-888-835-5322

This is an unofficial announcement of Commission action. Release of the full text of a Commission order constitutes official action. See MCI v. FCC. 515 F 2d 385 (D.C. Circ 1974).

*FOR IMMEDIATE RELEASE*
August 8, 2005

*NEWS MEDIA CONTACT:*
Catherine Bohigian at (202) 418-1000

**STATEMENT OF FCC CHAIRMAN KEVIN J. MARTIN**

I am very concerned about the activities that led the New York Attorney General to investigate Sony BMG Music Entertainment and ultimately resulted in a settlement agreement with that company.

The FCC has longstanding rules prohibiting payola. These rules serve the important purpose of ensuring that the listening public knows when someone is seeking to influence them. Broadcasters must comply with these rules. The Commission will not tolerate non-compliance. While payola may not be a widespread practice in the broadcasting industry, to the extent it is going on, it must stop.

I have directed the Enforcement Bureau to review the settlement agreement reached by Sony BMG and the New York Attorney General and investigate any incidents in which the agreement discloses evidence of payola rule violations. If the Bureau determines violations of the payola rules have occurred, the Commission will take swift action. In addition, if the Bureau is presented with evidence of payola rule violations outside of the Sony BMG Music Entertainment settlement, it is to thoroughly investigate those complaints as well.



# NEWS

Federal Communications Commission
445 12th Street, S.W.
Washington, D. C. 20554

News Media Information 202 / 418-0500
Internet: http://www.fcc.gov
TTY: 1-888-835-5322

This is an unofficial announcement of Commission action. Release of the full text of a Commission order constitutes official action. See MCI v. FCC. 515 F 2d 385 (D.C. Circ 1974).

FOR IMMEDIATE RELEASE
CONTACT: Rudy Brioché: (202) 418-2300
e-mail: rudy.brioche@fcc.gov
July 25, 2005

## COMMISSIONER ADELSTEIN CALLS FOR FCC INVESTIGATION BASED ON SPITZER PAYOLA SETTLEMENT

Commissioner Adelstein is calling for an investigation of payola practices uncovered by New York Attorney General Eliot Spitzer, based on the announcement of a settlement with Sony BMG Music Entertainment today.

Commissioner Adelstein said, "It's a real tribute to Attorney General Eliot Spitzer that he has blown the lid off a potentially far-reaching payola scandal. I've been expressing concern about this for some time in terms of enforcing our federal rules, but it took someone with Spitzer's tenacity and subpoena power to bring forward solid evidence."

> **"We've seen a lot of smoke around payola for a while, but now we know it's coming from a real fire. It's time to dump a bucket of cold water on it.**
>
> **It's unfair to listeners if they hear songs on the radio because someone was paid off, not because it's good music.**
>
> **We need an immediate investigation to determine whether these practices violate federal payola laws. I've asked Mr. Spitzer to share all of the evidence that he has uncovered with the FCC."**

Commissioner Adelstein has challenged the entertainment industry to reform its practices, and he openly called for the American public to help the FCC in monitoring and enforcing the rules against airing undisclosed promotions, including VNRs and product placements (http://hraunfoss.fcc.gov/edocs_public/attachmatch/DOC-258962A1.pdf).

At the urging of Commissioner Adelstein, the Commission issued a unanimous Public Notice on Video News Releases and a fact sheet on payola. In the Notice, the FCC said the payola rules "are grounded in the principle that listeners and viewers are entitled to know who seeks to persuade them with the programming."
(http://hraunfoss.fcc.gov/edocs_public/attachmatch/FCC-05-84A1.doc)
(http://www.fcc.gov/cgb/consumerfacts/PayolaRules.html).

- FCC -